COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice
Dahoud Askar
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-368-1667
Email: Dahoud.Askar@usdoj.gov
Alexander Gottfried
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-615-1286
Email: Alexander.Gottfried@usdoj.gov
*Attorneys for the United States*

FILED ENTERED RECEIVED SERVED ON
COUNSEL/PARTIES OF RECORD
AUG 20 2024
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHELE FIORE,

Defendant.

**SUPERSEDING CRIMINAL INDICTMENT**

Case No. 2:24-cr-00155-JAD-DJA

**VIOLATIONS:**

Count One:
18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Counts Two – Seven
18 U.S.C. § 1343 (Wire Fraud)

**THE GRAND JURY CHARGES THAT:**

## BACKGROUND ALLEGATIONS

1. At all times material to this Indictment, unless otherwise set forth, with all dates and times alleged to be "on or about" or "approximately":

2. The defendant, MICHELE FIORE, an individual who resided in the State of Nevada and served as a Councilwoman for the City of Las Vegas, Nevada from 2017 until 2022, engaged in a scheme to defraud charitable donors of more than $70,000 for her own personal benefit.

3. Person A, an individual who resided in the State of Nevada, is a relative and co-conspirator of FIORE who received a portion of the fraudulent proceeds and served as a conduit to conceal the means and methods of FIORE's fraud by receiving payment from entities controlled by FIORE and spending those proceeds to benefit the conspirators.

4. In February 2017, FIORE established Political Action Committee A. The stated purpose of FIORE's PAC was "community outreach."

5. In July 2019, FIORE founded a Section 501(c)(3) charity, Charity A, with herself and Person A as officers. According to its articles of incorporation, the specific purpose of Charity A was "to raise funds for the Las Vegas Community to provide goods and/or services as needed."

6. In order to promote the public interest in the development and operation of legitimate charitable groups, Section 501(c)(3) of the Internal Revenue Code exempted from taxation non-profit organizations organized and operated exclusively for certain charitable, religious, scientific, and educational purposes. Section 501(c)(3) charities were specifically prohibited from using their net earnings for the purpose of benefitting any private individual

or participating in political campaigns on behalf of any candidate for public office.

7. Company A was a private real estate development company operating in the State of Nevada.

8. Company B was a private company owned and operated by Person A.

9. Company C was a political strategy and fundraising company operating in the state of Nevada, which provided services to FIORE's PAC and City Council campaign.

10. Donor A was a contributor to Political Action Committee A. Donor A was a public official residing in the state of Nevada at the time of their donation.

11. Donor B was a contributor to Charity A, residing outside the State of Nevada at the time of their donation.

12. Donor C was a contributor to Charity A. Donor C was an attorney residing in the state of Nevada at the time of their donation.

13. Donor D was a contributor to Charity A. Donor D was an attorney and real estate developer residing in the state of Nevada at the time of their donation.

14. Donor E was a contributor to Political Action Committee A. Donor E was a trust headquartered in the state of Nevada at the time of their donation.

15. Donor F was a contributor to Political Action Committee A. Donor F was a union operating in the state of Nevada at the time of their donation.

**The Fallen Officer's Memorial**

16. On or about June 8, 2014, Officers Alyn Beck and Igor Soldo of the Las Vegas Metropolitan Police Department were killed in the line of duty.

17. On or about June 17, 2015, the Las Vegas City Council unanimously approved

a measure, sponsored by then City Councilman Steven Ross, to name a new park in honor of Alyn Beck, located in Ross's Ward 6 council district. On or about June 21, 2017, FIORE was elected to replace the retiring Councilman Ross as Ward 6 City Councilperson.

18. On or about December 18, 2018, the City of Las Vegas broke ground on Alyn Beck Memorial Park, the construction of which was to be paid for by Company A by agreement with the City of Las Vegas. At the groundbreaking ceremony, FIORE proposed the creation of a statue of Officer Beck ("the Alyn Beck Statue") to be installed at the entrance of Alyn Beck Memorial Park. FIORE told attendees at the groundbreaking ceremony that she had come up with the idea for the Alyn Beck Statue that morning.

19. On August 9, 2019, Company A entered into a purchase contract with the sculptor who created the Alyn Beck Statue to pay the cost of the creation, installation, and shipping of the statue. FIORE was aware from her role as a City Councilwoman involved in the planning of Alyn Beck Memorial Park that Company A had agreed to pay for the statue.

20. Alyn Beck Memorial Park was completed in January 2020. On January 9, 2020, the City of Las Vegas issued a news release inviting members of the public to join FIORE for the grand opening of the park and unveiling of the Alyn Beck Statue later that month.

21. In January 2020, at a meeting in FIORE's office prior to the unveiling ceremony, FIORE falsely told the sculptor who created the Alyn Beck Statue that she had appropriated discretionary funds through the City of Las Vegas to pay for the Alyn Beck Statue.

22. On January 31, 2020, the Alyn Beck Statue was unveiled at the grand opening of Alyn Beck Memorial Park. FIORE spoke at the unveiling ceremony, stating that finishing the park had been her "first goal as the new Councilwoman out here in the Northwest."

**COUNT ONE**
(18 U.S.C. § 1349) – Conspiracy to Commit Wire Fraud

23. Paragraphs 1 – 22 are incorporated and realleged as if fully set forth herein.

24. From at least as early as July 2019, through in or around February 2020, in the District of Nevada and elsewhere, the defendant, MICHELE FIORE, did knowingly conspire and agree with others, known and unknown to the grand jury, to devise and intend to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, and to knowingly transmit and cause to be transmitted by means of interstate wire communications for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343.

**OBJECT OF THE CONSPIRACY**

25. Beginning no later than in or around July 2019 and continuing until at least in around February 2020, within the District of Nevada and elsewhere, FIORE and Person A conspired with one another and with others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

**MANNER AND MEANS**

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

26. From at least July 2019 through at least February 2020, FIORE intentionally made material misrepresentations in soliciting tens of thousands of dollars in contributions on behalf of a charitable organization and political action committee. Specifically, FIORE represented to donors that their contributions would be used to fund the creation of the Alyn Beck Statue or another memorialization of the fallen officers. Instead of using the funds for the purposes described, FIORE spent the funds on a variety of personal expenses, including rent, travel, transfers to Person A, and payment for FIORE's daughter's wedding.

27. FIORE instructed prospective donors to write a check to a bank account that FIORE controlled at Bank of Nevada. FIORE typically collected these donor checks in person or directed Person A to collect the checks on her behalf. In the processing of these checks through the Bank of Nevada, FIORE caused the transmission of interstate wire communications. Once FIORE was in receipt of the charitable donations, FIORE directed that money to be spent not for the charitable purpose solicited, but for her own personal expenses, including rent for FIORE's personal residence, payments to Company C for political fundraising services, and payments for her daughter's wedding.

28. In order to conceal this unlawful conduct, FIORE caused the fraudulently obtained contributions to be transferred from the bank accounts of Political Action Committee A and Charity A into different bank accounts, including accounts controlled by FIORE, Company B, and Person A personally.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy, and to accomplish its objectives, the following acts, among others not enumerated below, were committed in the District of Nevada and elsewhere:

29. On or about July 16, 2019, FIORE caused Donor A to write a $5,000 check to Political Action Committee A, FIORE's political action committee, by representing that she would use the money for the Alyn Beck Statue. Donor A made the donation for the sole purpose of funding the Alyn Beck Statue.

30. Also on or about July 16, 2019, FIORE transferred $5,000 from Political Action Committee A, to an account controlled by Person A, which Person A used at FIORE's direction to purchase money orders to pay rent on FIORE's personal residence.

31. On or about July 25, 2019, FIORE and Person A established Charity A as a Section 501(c)(3) charity "to raise funds for the Las Vegas Community to provide goods and/or services as needed."

32. On or about October 1, 2019, FIORE prepared a letter to donors in which FIORE claimed to be raising $80,000 to build a statue of Alyn Beck, with a plan to later raise $80,000 more to build a statue of Igor Soldo. In this letter, FIORE requested that donors donate funds for the statues and memorial parks to her charitable organization, Charity A In this letter, FIORE promised that "100% of all contributions are used for this charitable event." At the time that FIORE made these solicitations, Company A had already agreed to pay for the Alyn Beck Statue, a fact which was known to FIORE.

33. On or about October 28, 2019, FIORE caused Donor B to write a check for $5,000 to Charity A. This donation was made for the sole purpose of funding the Alyn Beck Statue. None of the money from Donor B's donation was spent for its solicited purpose.

34. On or about October 29, 2019, FIORE wrote a check from Charity A made out to Company B. A representative from Company B made a cash withdrawal shortly thereafter. Subsequently, FIORE caused the cash to be used to make a payment related to FIORE's daughter's wedding.

35. On or about November 12, 2019, FIORE caused $1,000 to be transferred from Charity A to Political Action Committee A. None of the money transferred in this transaction was used to fund the Alyn Beck Statue.

36. On or about December 3, 2019, FIORE caused Donor C, a recipient of FIORE's October 1, 2019 letter, to write a check for $10,000 to Charity A. This donation was made for the sole purpose of funding the Alyn Beck Statue. None of the money from Donor C's donation was spent for that purpose.

37. Between on or about December 3, 2019, and December 16, 2019, FIORE caused $6,600 to be transferred from Charity A to other accounts controlled by herself and Person A, including $4,400 to Company B, $1,000 to Person A's personal bank account, $500 to a political consulting company owned by FIORE, $400 to FIORE's City Council campaign, and $200 to Political Action Committee A.

38. On or about December 9, 2019, FIORE caused a $3,350 payment to be made from Charity A to Company C for services rendered to her City Council campaign and political action committee.

39. On or about January 21, 2020, FIORE caused Donor D to write a check for $2,500 to Charity A, making the representation that the donation would be used for charitable causes related to law enforcement. None of the money from Donor D's donation was spent for such purposes.

40. Between on or about January 3, 2020, and January 27, 2020, FIORE caused $10,800 to be transferred from Charity A to Company B's account. None of the money transferred in these transactions was used to fund the Alyn Beck Statue.

41. On or about February 3, 2020, FIORE sent an email to a representative of Donor E and Donor F soliciting a donation for the Alyn Beck statue. In her email, FIORE directed donations to be made to Political Action Committee A and promised that "100% of all contributions are used for this charitable event."

42. On February 3, 2020, a representative from Donor E issued a check to Political Action Committee A in the amount of $5,000, based on FIORE's representations that the money would be used for the Alyn Beck statue.

43. On February 6, 2020, a representative from Donor F issued a check to Political Action Committee A in the amount of $5,000, based on FIORE's representations that the money would be used for the Alyn Beck statue. The memo line of the check from Donor F read "Alyn Beck Statue".

44. The solicitation to and donations from Donor E and Donor F were made after the Alyn Beck statue was unveiled. None of the funds provided by Donor E and F were used to fund the Alyn Beck Statue. Instead, FIORE used the funds to repay another donor from whom she had fraudulently solicited donations.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SEVEN

(18 U.S.C. §§ 1343, 2) –Wire Fraud

### The Scheme to Defraud

45. Paragraphs 1 through 44 are incorporated and realleged herein.

46. From at least as early as July 2019, through in or around February 2020, the defendant, MICHELE FIORE, and others known and unknown to the grand jury, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises.

### Execution of the Scheme

47. On or about the dates listed below, in the District of Nevada and elsewhere, for the purpose of executing the above-described scheme and artifice, and attempting to do so, the defendant FIORE did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, the writings, signals, and sounds described below, each transmission constituting a separate count:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 2 | 07/16/2019 | Settlement of check 1503, in the amount of $5,000 from Donor A's Account ending in 3450, deposited to Political Action Committee A's account ending in 7507, held at Bank of Nevada |
| 3 | 10/28/2019 | Settlement of check 1441, in the amount of $5,000 from Donor B's Account ending in 3828, deposited to Charity A's account ending in 0251, held at Bank of Nevada. |

| | | |
|---|---|---|
| 4 | 12/03/2019 | Settlement of check 4737, in the amount of $10,000 from Donor C's Account ending in 6449, deposited to Charity A's account ending in 0251, held at Bank of Nevada. |
| 5 | 1/21/2020 | Settlement of check 1782, in the amount of $2,500 from Donor D's Account ending in 0410, deposited to Charity A's account ending in 0251, held at Bank of Nevada. |
| 6 | 2/7/2020 | Settlement of check 413676, in the amount of $5,000 from Donor E's Account ending in 2557, deposited to Political Action Committee A's account ending in 7507, held at Bank of Nevada. |
| 7 | 2/7/2020 | Settlement of check 3278, in the amount of $5,000 from Donor F's Account ending in 5784, deposited to Political Action Committee A's account ending in 7507, held at Bank of Nevada. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

48. The allegations contained in this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

49. Upon conviction of one or more of the wire fraud offenses, in violation of Title 18, United States Code, Section 1343, set forth in Counts Two through Five of this Indictment, FIORE shall forfeit to the United States any property, real or personal, which represents or derived from proceeds traceable to the wire fraud offenses, pursuant to Title 18, United States Code, Section 981 (a)(1)(C) and Title 28, United States Code, Section 2461.

The property subject to forfeiture includes, but is not limited to, a money judgment representing the value of the gross proceeds traceable to any offense of conviction.

50. If any of the above-described forfeitable property, as a result of any act or omission of FIORE:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property up to the value of the property listed above as being subject to forfeiture.

**DATED:** this 20th day of August, 2024

**A TRUE BILL:**

/S/
FOREPERSON OF THE GRAND JURY

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

Dahoud Askar & Alexander Gottfried
Trial Attorneys