COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice
DAHOUD ASKAR
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-368-1667
Email: Dahoud.Askar@usdoj.gov
ALEXANDER GOTTFRIED
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-615-1286
Email: Alexander.Gottfried@usdoj.gov
*Attorneys for the United States*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>MICHELE FIORE,<br><br>                    Defendant. | Case No. 2:24-cr-00155-JAD-DJA<br><br>**Government's Opposition to Defendant's Motion in Limine to Exclude Testimony of Nicole Beck (ECF No. 31)** |

The United States of America, by and through COREY AMUNDSON, Chief, United States Department of Justice, Public Integrity Section, and ALEXANDER GOTTFRIED and DAHOUD ASKAR, Trial Attorneys comes and submits this response in opposition to Defendant's Motion in Limine to Exclude Government's References And/Or Inclusion Of Alyn Beck's Family And/Or Widow To Testify In This Case. The government intends to call Nicole Beck to testify in the above-captioned case to provide testimony that will be relevant and not unfairly prejudicial.

**Factual Background**

On June 8, 2014, Officer Alyn Beck of the Las Vegas Metropolitan Police Department was killed in the line of duty, along with his partner, Igor Soldo. Officer Beck left behind a wife, Nicole Beck, and three children. Following her husband's death, Nicole Beck worked closely with Las Vegas City Councilman Steven Ross to memorialize her husband by persuading the Council to name a new park after him in 2015. Alyn Beck Memorial Park was to be constructed and paid for by Company A, a local real estate developer, as part of an agreement with the City of Las Vegas. The park was to be located in Ward 6, which Councilman Ross represented and where Alyn and Nicole Beck resided. On June 21, 2017, Councilman Ross left office and Michele Fiore became the Councilwoman for Ward 6.

On December 18, 2018, Company A broke ground on Alyn Beck Memorial Park, at a ceremony attended by local public officials including Fiore. At the ceremony, Fiore gave a speech in which she proposed, for the first time, that the park should include a statue of Alyn Beck, saying that she had come up with the idea that morning "in the shower." The United States expects that Nicole Beck would testify that she was not sure that she liked the idea of a statue, both because she did not think it would look like her husband and because she was worried it would become a target for vandalism by anti-police protesters. Beck had never met Fiore prior to the groundbreaking ceremony, and Fiore never consulted Beck before publicly proposing the idea of a statue.

In the months following the groundbreaking ceremony, Beck communicated with a representative of Company A and with the sculptor regarding the creation of the Alyn Beck Statue. Beck did not directly communicate with Fiore during that period, receiving one e-mail from Fiore's assistant. Beck next spoke to Fiore at the dedication ceremony for the park on

2

January 31, 2020. At that ceremony, Fiore told Beck that finishing the park had been her "number one goal" as Councilwoman, a statement that she repeated in her public speech at the event. Beck was not involved in any efforts to fundraise for the development of the park or the creation of the Alyn Beck statue, which were both fully paid for by Company A. At no point did Fiore tell Beck that she was fundraising for the statue. Beck never received any money from Fiore, her political action committee, or her charity.

If called as a witness at trial, Beck will testify to the basic facts outlined above. For many or most of the above statements, no other person on the government's witness list is able to provide that evidence. The sum and substance of Beck's expected testimony was made known to defense through discovery, in the form of an FBI 302 from an interview with Beck, conducted on June 20, 2024.

## Argument

On September 3, 2024, defense counsel moved to exclude Beck's testimony. The apparent legal basis for the defendant's motion is Federal Rule of Evidence 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice," among other reasons.[1] In fact, Beck's testimony carries significant probative value that is not substantially outweighed by a danger of unfair prejudice.

The defendant asserts in a conclusory fashion that Beck's testimony offers "no value

---

[1] The defendant's motion cites "FRCP 403," but context makes it clear that she is referring to Federal Rule of Evidence 403. Her conclusion also states that "this Court should prohibit the government from introducing the referenced *other acts* evidence." (emphasis added.) This is identical to the conclusion sentence of the defendant's other motion in limine. (ECF No. 30.) Because it is unclear from the defendant's motion (or otherwise) how Mrs. Beck's testimony would constitute 404(b) "other acts" evidence, the United States focuses here on the defendant's Rule 403 argument.

to a jury." ECF No. 31 at 2. This could not be further from the truth. Alyn Beck Memorial Park and the Alyn Beck statue are at the center of the charges in this case. Nicole Beck's testimony is critical in helping the jury understand the context of how the park came into being and what it was intended to signify. Indeed, it is Beck's testimony that provides much of the support for paragraphs 16-22 of the Second Superseding Indictment, "The Fallen Officer's Memorial." Especially following the death of Councilman Ross in 2022, Beck is perhaps the only living witness who can offer testimony about the history of the project before Fiore came onto the scene several years after Officer Beck's death.

But beyond merely providing background for the jury, Beck's testimony will also shed light on Fiore's state of mind and her intent in soliciting donations for the statue, the crucial element in a wire fraud prosecution. The fact that Fiore never consulted Mrs. Beck about her feelings about the statue, and the fact that she rarely interacted with her throughout the process, provides circumstantial evidence that Fiore's true motive was not to honor Beck's husband. It was to find an angle that would help her raise money from sympathetic donors and enrich herself and her family.

Further, the fact that Fiore never told Beck about her efforts to raise money for the statue suggests consciousness of guilt. If Fiore believed she was doing a good and charitable thing by raising money for the statue, she would presumably want to keep Alyn Beck's family posted on her efforts. Fiore is a career politician, and the evidence suggests that is willing to take credit for good deeds. The fact that she did not tell Nicole Beck that she was raising money for her husband's memorial indicates that she knew she was doing something wrong that she wanted to conceal. Had Fiore disclosed her extensive fundraising efforts to Beck, and had Beck learned that Fiore had not actually contributed any money toward the statue as she

promised donors, Beck could have exposed Fiore's fraud.

Equally important, the fact that Fiore never consulted with Beck or offered Beck any of the proceeds of her fundraising efforts, instead spending the funds on unrelated personal and political expenses shortly after they were raised, undercuts Fiore's anticipated defense that she had no choice but to divert the funds to her own purposes because of the "unexpected" generosity of Company A. Fiore cannot reasonably claim that she had no choice but to divert the funds to her own personal and political uses due to a last-minute offer by Company A to pay for the statue in full, when she had throughout her scheme kept the existence of her fundraising effort a secret from the fallen officer's next of kin. This longstanding concealment powerfully demonstrates that Fiore intended a fraud on her donors all along.

The defendant also writes: "Plus to include the widow would be an unnecessary and cruel means to her and her family personally." ECF No. 31 at 2. The defendant does not cite to any legal authority, and the government is aware of none, for the proposition that a witness can be excluded by an opposing party if testifying would be emotionally difficult for that witness. It should be noted that criminal cases involving sexual assault, domestic abuse, and other violent crimes routinely require testimony by victims who have experienced severe trauma, usually directly about the incident that caused that trauma.

However, while Nicole Beck has been served with a trial subpoena, the government wishes to note that it will not compel her testimony against her will. Beck has been informed by undersigned counsel that she is not required to testify and that she can change her mind about testifying at any point prior to trial. She remains firm that she is willing to take the stand and share her experience with the jury. The jury is entitled to hear her testimony, which is

both highly probative and not unfairly prejudicial.

## Conclusion

For the foregoing reasons, the defendant's motion to exclude Nicole Beck's testimony should be denied.

DATED this 9th day of September, 2024.

                                      COREY R. AMUNDSON
                                      Chief, Public Integrity Section
                                      U.S. Department of Justice

                                      /s/ Alexander Gottfried
                                      Alexander Gottfried and Dahoud Askar
                                      Trial Attorneys