Michael W. Sanft (8245)
**SANFT LAW**
411 E. Bonneville Ave., Suite 360
Las Vegas, Nevada 89101
(702) 497-8008 (office)
(702) 297-6582 (facsimile)
michael@sanftlaw.com
*Attorney for Defendant Michele Fiore*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHELE FIORE,<br><br>Defendant. | Case No. 2:24-cr-0155-JAD-DJA<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S OMNIBUS MOTION IN LIMINE (ECF NO. 29)** |

This Motion is filed timely.

**I.   INTRODUCTION**

This Court is familiar with the facts and circumstances as alleged by the Government, and therefore in the interest of expediency Ms. Fiore submits that the facts and circumstances of the indictment are and concern the alleged violations of campaign finance laws resulting in the purported offenses alleged.

The Government spills much ink with grandiose and meritless arguments in its final attempts to completely gut Ms. Fiore's defense she seeks to illuminate the jury with as allowable through due process guardrails. *See* ECF No. 29.

The unfathomable and nefarious acts the Government has engaged in this particular case remains unprecedented in any campaign finance violation case in the history of the State of Nevada. The overt designation of a public official to deliberate deny due process guardrails in

purported investigations of campaign finance violations rises to the level of egregiousness that is simply of historic proportions.  This is further compounded by the Government's deliberate failure to provide any documentation in over 90,000 pages of discovery including recordings, that would substantiate or justify the classification of a public official, with no preceding criminal behavior, a Domestic Terrorist and subsequently increasing Ms. Fiore's Band Level from a I to a II as described infra. Accordingly, Ms. Fiore is entitled to present a complete defense as guaranteed by the Fourth and Sixth Amendments to the United States Constitution.

## II.     ARGUMENT

### 1.     Rule 403 prohibits the introduction of this evidence.

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Jones v Davis*, 8 F.th 1027 (9th Cir. 2021), *citing to Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (citations and quotation marks omitted). This guarantee includes, "at a minimum, ... the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In many criminal cases, the "most important witness for the defense" in that determination of guilt "is the defendant himself." *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

A defendant's right to present a complete defense is abridged by any restrictions on defense evidence that are "arbitrary or disproportionate" and that infringe on the defendant's "weighty interest." *Id.* citing to *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ).

Under this framework, the restriction of a defendant's evidence pursuant to an evidentiary rule is arbitrary when applying the rule serves no legitimate purpose in the case at hand.

The Government's attempts at stifling Ms. Fiore's ability to present a complete defense and demonstrate the bizarre and unprecedented actions taken by the Government in this case are astonishing. Taking into consideration that the Government's classification of Ms. Fiore, a public servant as a Domestic Terrorist over the course of five years without any justification for same as delineated *infra*, is likewise an abhorrent and meritless abuse of due process that has yet to be seen in any type of case against a public servant for purported and alleged campaign finance violations.

1. **Motion to preclude form of argument to elicit jury nullification**

Jury nullification occurs when a jury acquits a defendant, even though the government proved guilt beyond a reasonable doubt. *United States v. Powell*, 955 F.2d 1206, 1212–13 (9th Cir. 1992). It is well established that jurors have the power to nullify, and this power is protected by "freedom from recrimination or sanction" after an acquittal. *Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005). However, juries do not have a right to nullify, and courts have no corresponding duty to ensure that juries are able to exercise this power, such as by giving jury instructions on the power to nullify. *Id*. at 1079–80.

On the contrary, "courts have the duty to forestall or prevent [nullification], whether by firm instruction or admonition or . . . dismissal of an offending juror," because "it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Id*.

Although a court has "the duty to forestall or prevent [nullification]," including "by firm instruction or admonition," *Merced*, 426 F.3d at 1080, a court **_should not state_** or imply that (1) jurors could be punished for jury nullification, or (2) an acquittal that results from jury nullification is invalid. Neither proposition is correct, and these are the only legal principles that protect a jury's power to nullify. *See United states v Kleinman*, 880 F.3d 1020 (9th Cir. 2018).

  While jurors undoubtedly should be told to follow the law, the statement that there is no valid jury nullification misstates the role of nullification because an acquittal is valid, even if it resulted from nullification. *Id.* at 1040.

  In *Kleinman,* the Ninth Circuit rejected the Government's assertions as to *a Kryszke* instruction[1] should not become the go-to instruction in trials where jury nullification is a concern, and courts should "generally avoid[] such interference as would divest juries of their power to acquit an accused, even though the evidence of his guilt may be clear." *Citing to* United *States v. Simpson*, 460 F.2d 515, 520 (9th Cir. 1972).

  Here the Governments Motion makes classifications of specific evidence which they label as irrelevant and inadmissible. Specifically, the following:

> • Evidence or argument about the federal prosecutions related to the Bundy[2] ranching family, and/or the defendant's public advocacy on their behalf;

> • Evidence or argument related to the decision of the United States Attorney's Office in the District of Nevada, including any individual prosecutor in that office, to participate or not participate in the instant investigation and prosecution;

---

[1] *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988), a case in which the defendant mentioned jury nullification in his closing argument, and during deliberations the jury asked the court about the doctrine. "The court responded, 'There is no such thing as valid jury nullification . . . You would violate your oath and the law if you willfully brought in a verdict contrary to the law given you in this case.'" Id. The Sixth Circuit rejected the defendant's argument that the instruction was coercive, noting that "[a] jury's 'right' to reach any verdict it wishes does not . . . infringe on the duty of the court to instruct the jury only as to the correct law." Id. The Sixth Circuit did not discuss whether the court's instructions implied that the jury would be punished for nullification, or that an acquittal that resulted from jury nullification would be void.

[2] On January 8, 2018, after permitting written briefing, the district court concluded that the Brady violations were so egregious and prejudicial that the indictment needed to be dismissed with prejudice. It found "that retrying the case would only advantage the government by allowing [it] to strengthen [its] witnesses' testimony based on the knowledge gained from the information provided by the defense and revealed thus far." The court also highlighted "the prosecution's failure to look beyond the FBI file that was provided" for additional relevant information constituted a "reckless disregard for its [constitutional] obligations to learn and seek out favorable evidence." The court characterized the government's "representations about whether individuals were technically 'snipers' or not 'snipers' [as] disingenuous" given that the FBI's own documents referred to government "snipers" in the operation. It concluded that the FBI's failure to produce these documents was "flagrant prosecutorial misconduct in this case even if the documents themselves were not intentionally withheld [by the U.S. Attorney's Office] from the defense." Thus, it decided that no lesser sanction was available because the government's "conduct has caused the integrity of a future trial and any resulting conviction to be even more questionable." Retrial "would only advantage the government." The court dismissed the indictment with prejudice as a remedy for a due process violation and under its supervisory powers. S*ee United States v Bundy* No. 18-10287 (9th Cir. 2020)

- Evidence or argument about decisions by state and local authorities whether to investigate or prosecute the misconduct charged in the superseding indictment;

- Argument that the defendant was selectively or vindictively prosecuted based on her political beliefs or her views about federal law enforcement;

- Evidence of charitable works performed by the defendant unrelated to Charity A or Political Action Committee A;

- Argument regarding the potential sentence that the defendant might receive, including in light of her age.

Ironically, the first four requests made *supra*, are directly correlated to the Government's own acts and potential inequities of same. It is indisputable that the Government classified Ms. Fiore a Domestic Terrorist since at least prior to, June 30, 2020 despite no previous criminal records or acts to support said classification. This classification was unmerited since there were no legal grounds to designate a Las Vegas City Councilwoman and Mayor Pro Temp a Domestic Terrorist.

Since 2019, the Department of Homeland Security and the Federal Bureau of Investigation has been using leveled Threat Bands including five threat categories to understand the Domestic Terrorism threat. It is significant to note that the Government classified, Ms. Fiore under on a Level II Threat Band[3] when she served as a Las Vegas City Councilwoman and presently as a Nye County Justice of the Peace. This is indicated in the July 1, 2024 memorandum by Jaski Kyle

---

[3] A Level II Threat Band is described as (2) Anti-Government or Anti-Authority Violent Extremism: This threat category encompasses ***the potentially unlawful use or threat of force or violence, in violation of federal law, in furtherance of political and/or social agendas, which are deemed to derive from anti-government or anti-authority sentiment***, including opposition to perceived economic, social, or racial hierarchies, or perceived government overreach, negligence, or illegitimacy. This threat category typically includes threats from anarchist violent extremists (AVEs), militia violent extremists (MVEs), sovereign citizen violent extremists (SCVEs), and anti-government or anti-authority violent extremists-other (AGAAVE-Other). [Emphasis added] *See bi-dhs-domestic-terrorism-strategic-report-2023.pdf*

Robert, *See* DOJ 007825. It is also significant to note, that Ms. Fiore's Threat Band was increased at some point since on June 30, 2020, Ms. Fiore's Threat Band was Level I[4]. *See* DOJ 1163.

It is believed that this classification occurred after her involvement with the Bundy ranching family; *ergo*, but-for the Bundy ranching incident, Ms. Fiore would not have been subject to that classification of a Domestic Terrorist, and further due process guardrails would have been assured to Ms. Fiore that otherwise subjected her to excessive government overreach.

This classification was present, even as Ms. Fiore, a sitting Justice of the Peace of Nye County presented herself to her arraignment on July 16, 2024 as evidenced by the heightened level of security in and around the United States Federal Courthouse in Las Vegas. Multiple law enforcement vehicles were parked on Las Vegas Boulevard, blocking the lane closest to the courthouse, and multiple U.S. Marshals were present at the courthouse entrance, as well as in Magistrate Albreght's courtroom. The frivolous and extreme security measures that were taken during Ms. Fiore's appearance at her arraignment were a tacit acknowledgment of her connection to the Bundy case and the Government's Level II designation of her.

It is also significant to note that Ms. Fiore, as a public official, overwhelmingly advocated for the Bundy ranchers and for the sanction of the extremely egregious prosecutorial misconduct found in said case against AUSA Steven Myhre.[5] Ironically, Mr. Myhre's name is repeatedly seen throughout the discovery in this matter as it is clear that his participation in Ms. Fiore's case is overwhelming. In fact, the simple fix should have been that Mr. Myhre should have passed the

---

[4] Level I Threat Band is described as (1) Racially or Ethnically Motivated Violent Extremism: This threat category encompasses ***threats involving the potentially unlawful use or threat of force or violence***, in violation of federal law, in furtherance of political or social agendas which are deemed to derive from bias, often related to race, held by the actor against others, including a given population group. Racially or ethnically motivated violent extremists (RMVEs) use both political and religious justifications to support their racially- or ethnically-based ideological objectives and criminal activities. One set of RMVE threat actors use their belief in the superiority of the white race to justify their use of violence to further their political, cultural, and religious goals. A separate and distinct set of RMVE threat actors use real or perceived racism or injustice in American society, their desire for a separate Black homeland, and/or violent Page 5 of 46 interpretations of religious teachings to justify their use of violence to further their social or political goals. [Emphasis added] *See bi-dhs-domestic-terrorism-strategic-report-2023.pdf*

5

case to another AUSA in his office the moment he realized that it was Ms. Fiore who was the target, as to avoid all potential accusations of impropriety.

Most important though is that the Government failed to produce any documentation regarding both the Level I and Level II designations that would have justified such designations. The Government has failed to produce any of the following information in the over 90,000 pages of discovery disclosed to Ms. Fiore:

- Information or an allegation indicating the existence of federal criminal activity or a threat to national security (or to protect against such activity or threat).

- Any articulable factual basis that reasonably indicates the existence of federal criminal activity or a threat to national security (or to protect against such activity or threat)

- Memorandum including notices in support and regarding threat Level Banding including closure within six months and/ or extensions for six-month increments

- Indication that protocol was complied with and the required legal review for any FBI intelligence product, such as an Intelligence Information Report (IIR), related to a potential SIM or other sensitive information, in accordance with the guidelines in the FBI's DIOG and identified "legal review triggers."

- Similarly, in accordance with DHS I&A policy, any memoranda demonstrating compliance with rigorous review prior to dissemination to ensure compliance with all legal requirements; policies for the protection of privacy, civil rights, and civil liberties; and oversight principles, guidelines, and procedures.

Ms. Fiore's right to disclose and utilize the Government's own exhibits and develop factual testimony at trial regarding same is absolute. Notwithstanding same, it is also significant to note that Rule 404(b) applies to non-witnesses, under *United States v. McCourt*, 925 F.2d 1229 (9th Cir. 1991). *See also United States v. Cruz-Garcia*, 344 F.3d 951, 955 n. 3 (9th Cir. 2003) which Ms. Fiore is entitled to present evidence thereon.

As to Ms. Fiore's age and implications regarding punishment, it would be improper argument as it is not the job of the jury to consider such matters.  The jury is only to consider

whether the Government had satisfied its burden of proving their allegations against Ms. Fiore beyond a reasonable doubt.

### A. Ms. Fiore Has a Due Process Right to Present Evidence of Prosecutorial Vindictiveness under *Jenkins*

Ms. Fiore may establish a vindictive prosecution claim "by producing direct evidence of the prosecutor's punitive motivation," *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). Without direct evidence, Ms. Fiore may establish a prosecutorial vindictiveness claim by following a burden shifting framework and creating a "presumption of vindictiveness." *Id.* A rebuttable presumption of vindictiveness is created "by showing that the circumstances establish a 'reasonable likelihood of vindictiveness.'" See *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011). (quoting *United States v. Goodwin*, 457 U.S. 368, 373 (1982)); see *also United States v. Gallegos-Curiel,* 681 F.2d 1164, 1169 (9th Cir. 1982).

The designation of Ms. Fiore as a Level I Domestic Terrorist which was subsequently modified to a Level II Domestic Terrorist without any discovery or justification received for said designation is disturbing in and of itself. The designation of an elected public official, who has served the State of Nevada for over a decade, as a Domestic Terrorist is equally inconceivable as it is an unfathomable proposition.

This is even more egregious taking into consideration that this case and the almost decade long investigation into Ms. Fiore involves alleged campaign finance crimes which have nothing to do with domestic terrorism or threats thereof. Particularly disturbing though is the presence of overwhelming evidence indicating that this indictment over alleged campaign finance crimes has

taken different forms of allegations as indicated in the discovery, which demonstrates an overwhelming level of vindictiveness in the course and scope of the Government's investigation.

It is clear that the Government seeks to have this Court allow it to gut Ms. Fiore's due process rights in presenting evidence of vindictiveness, in the same manner that it abused Ms. Fiore's due process rights with frivolous designations of Domestic Terrorist to avoid proper guardrails ensuring Ms. Fiore's civil liberties remain intact.

**2. Motion to Admit Evidence of Other Crimes, Wrongs, or Acts under FRE 404(b)**

At the outset, "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *U.S. v. Wright*, 625 F.3d 583 (9th Cir. 2010), citing to *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984) (discussed with approval in *McCourt*, 925 F.2d at 1234, explaining that "*Aboumoussallem* is exemplary of a number of cases in which courts have admitted similar acts evidence for defense purposes").

Specific instances of prior conduct offered to prove one's character "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time," so "the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry." Advisory Committee Notes, Fed. R. Evid. 405. See also *United States v Charley* (9th Cir. 2021).

It is well-established that evidence of a prior crime, wrong, or incident "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "The rule is designed to avoid a danger

that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) (internal citation omitted).

Rule 404(b), however, carves out an exception to the general rule where the proposed evidence is offered to serve "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Government carries the burden to prove that the proposed evidence satisfies four requirements:

(1) the evidence tends to prove a material point (materiality);

(2) the other act is not too remote in time (recency);

(3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and

(4) . . . the act is similar to the offense charged (similarity).

*United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020).

But even then, "[t]he use of such evidence must be narrowly circumscribed and limited." *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982).

"[P]rior bad act evidence is allowed to show motive only when motive is in turn relevant to establish an element of the offense that is a material issue." *Brown*, 880 F.2d at 1014. But "[t]he prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to engage in [violence]." Id. at 1015.

Here the Government fails to satisfy its burden of establishing a cogent basis for which to infer that Ms. Fiore's intent from the factual circumstances of prior incidents is similar enough to the circumstances in the underlying charged offenses.

**3. Motion to Bar Specific Instances of "Good Acts" offered by Defendants**

Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

Here, because of the Government's Domestic Terrorist designations of Ms. Fiore, and the issued as Band Levels and the modifications of same, Ms. Fiore has an absolute right to provide admissible evidence of non-propensity in this case.

In addition, it is telling that the Government has included such language as "brazen example" and "tragedy of Officer Beck's murder" to denigrate Ms. Fiore's reputation and character in its Omnibus Motion in Limine, which foreseeably has allowed the press to the public filings in this case, which has written articles that are one sided and which have rightly inflamed the public if the Government's accusations were actually true.  Furthermore, the Government's language has foreseeably colored the opinions of potential jurors who will be on this panel, with no way for Ms. Fiore to defend herself before trial. *See* ECF No. 29, at pages 2-3.

A criminal defendant may present evidence of his own character in the form of opinion testimony or reputation testimony. Fed. R. Evid. 404(a)(2)(A), 405(a). However, specific instances of conduct are admissible only when the character trait is "an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).

The voluminous discovery in this case and witness lists and statements demonstrates the Governments reliance on 404(b) evidence that they intend on presenting, identified in its Notice of Intent to Introduce 404(b) Evidence filed under seal, and objected to in Ms. Fiore's Motion in Limine to Exclude Rule 404(b) Evidence.  *See* ECF NO. 30. An essential element of the charges requires specific intent to commit the crime, or the requisite mens rea on each and every one of the Counts. Ms. Fiore is entitled to present admissible evidence of character that addresses any of the charges, claims or defenses in this case.

Although Rule 404(a) determines when character evidence may be admissible, Rule 405 "determine[s] what form that evidence may take." *United States v. Keiser*, 57 F.3d 847, 855 (9th Cir. 1995) (emphasis in original); see also Advisory Committee Notes, Fed. R. Evid. 404 ("Once the admissibility of character evidence in some form is established under [Rule 404], reference must then be made to Rule 405, which follows, in order to determine the appropriate method of proof.").

Under limited circumstances, however, Rule 405 allows two methods by which the government can prove a character trait with specific instances of the defendant's conduct: (a) discrediting a character witness's testimony during cross-examination; or (b) proving or disproving character "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense." *See Fed. R. Evid. 405(a)–(b)*.

The Government "has the burden of proving that the evidence meets all of the above requirements."  See *United States v. Lague*, 971 F.3d 1032, 1035 (9th Cir. 2020) *United States v. Arambula-Ruiz* , 987 F.2d 599, 602 (9th Cir. 1993). Under Rule 404(b), "the government ... bears the burden of proving a logical connection between appellant's purported involvement in the

previous [act] and a material fact at issue in the crime with which he was charged." *United States v. Mayans,* 17 F.3d 1174, 1183 (9th Cir. 1994).

Furthermore, the Government has emphasized the "confusion, unfair prejudice, and substantial delay that would result if [defendant was] permitted to introduce evidence of each of [her] purported good acts", as a reason to bar the defendant from presenting her theory of defense, yet has yet to produce bate numbers for the exhibits it intends to introduce at trial, explaining that it can only provide such information at trial.  The Government has had more than five years to investigate and present to a grand jury what they believe are Ms. Fiore's charges that they can prove beyond a reasonable doubt, but they cannot provide the bate stamp numbers to their own exhibit list.  This position flies in the face of their argument of "confusion, unfair prejudice, and substantial delay", let alone the practice in this jurisdiction of disclosing exhibit lists with corresponding bate stamp numbers.  Defendant has worked diligently to review all of the almost 90,000 pages of discovery in six weeks, yet the Government cannot identify to Ms. Fiore what specific documents it will show a jury at trial… until Ms. Fiore is in trial.

**4. Motion for Corrected/Supplemented Notice of Expert Discovery**

In the superseding indictment, the Government identifies a charity, and a political action committee.  It is foreseeable that the Government will try to discuss a campaign account.  Based upon the Government's witness list, no one has been identified as an expert from the Government to educate the jury as to the differences of each.  Such information is critical to ensure that the jury understands each entity discussed during the trial.

In discussions with the Government in which this concern was addressed, the Government believes that the Nevada Secretary of State representative can correctly educate the jury as each type of entity. Mr. Aloian is available to do the same. In the end, as long as the jury can properly understand the differences to each from the Government's witness, Mr. Aloian's expert testimony regarding that question would be moot.

**5. Motion for Pre-Trial Daubert Hearing**

Ms. Fiore would not object to a pre-trial Daubert hearing of Mr. Aloian as long as whomever the Government intends on using to educate the jury as to the differences between a charity, a political action committee, and a campaign fund, is also properly vetted. Once again, this is only to ensure that the jury is properly educated as to the differences of each.

Dated: September 10, 2024.

By: _____
Michael Sanft, Esq.
*Attorney for Michele Fiore*