COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice
DAHOUD ASKAR
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-368-1667
Email: Dahoud.Askar@usdoj.gov
ALEXANDER GOTTFRIED
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-615-1286
Email: Alexander.Gottfried@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>MICHELE FIORE,<br><br>          Defendant. | Case No. 2:24-cr-00155-JAD-DJA<br><br>**Government's Reply to Defendant's Response to Government's Omnibus Motion in Limine [ECF No. 45]** |

Certification: This reply is timely.

The United States of America, by and through Corey Amundson, Chief, United States Department of Justice, Public Integrity Section, and Alexander Gottfried and Dahoud Askar, Trial Attorneys, hereby files this reply in support of the government's omnibus motion in limine. For the reasons discussed below, the government asks that the motions constituting the government's omnibus motion in limine be granted.

1

## Argument

**A.    The Court should preclude evidence or argument that encourages jury nullification.**

Although the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense," that right is not unlimited. *Green v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). To be admissible, evidence must be relevant and comply with the Federal Rules of Evidence, the Constitution, and the law. Fed. R. Evid. 402. In its omnibus motion in limine, the government outlined several categories of evidence and argument that would serve no purpose other than to encourage jury nullification. Nullification is "a violation of a juror's sworn duty to follow the law as instructed by the court," and "trial courts have the duty to forestall or prevent" it. *Merced v. McGrath*, 426 F.3d 1076, 1079–80 (9th Cir. 2005). Accordingly, the government moved to exclude any evidence and argument that would encourage jury nullification, including the following specific categories[1]:

> **1.    The defendant's assertions of being labeled a "domestic terrorist" rest upon a misreading of two FBI documents and are irrelevant to the wire fraud charges the defendant faces.**

The defendant inveighs against the "unfathomable and nefarious acts" allegedly committed by the government in this case, chief among them being that the FBI classified her as a "Domestic Terrorist." Undersigned counsel are not aware of any such designation, and the defendant's allegation appears to derive from a misreading of the FBI's threat bands related to law enforcement surveillance operations. Regardless, the defendant's alleged

---

[1] Fiore's response spent significant time discussing *United States v. Kleinman*, 880 F.3d 1020 (9th Cir. 2017). However, the government is not requesting that the court state or imply that jurors could be punished for jury nullification or that an acquittal resulting from jury nullification is invalid.

2

classification within the threat bands would have no bearing on any element of the charges the defendant faces in this case.

First, Fiore misstates how the FBI's threat bands function, leading to her mistaken claim. The FBI threat banding used in surveillance operations related to the Fiore investigation significantly differs from the threat assessments done by the Department of Homeland Security ("DHS"), which Fiore cites in her response. ECF No. 5 n.3, 6 n.4. Threat banding in the context of FBI surveillance operations in criminal cases is broadly correlated to the type of investigation and is unrelated to the level of threat, if any, an individual may pose. Several offenses fall under each of the six threat band levels. Threat Band I refers to the highest priority threats identified by the FBI, and Threat Band VI refers to the lowest priority threats. In this case, the investigation into Fiore was opened as a domestic public corruption investigation because Fiore is a public official. Because domestic public corruption cases are a national priority for the FBI, "National Threat Band: I" is listed on the two surveillance documents referred to in Fiore's response. *See* FBI, What We Investigate: Public Corruption, *https://www.fbi.gov/investigate/public-corruption* (last visited Sept. 13, 2024) (describing public corruption as the FBI's top criminal investigative priority). But this designation reflecting the national prioritization of domestic public corruption matters generally does *not* mean that Fiore is classified as a domestic terrorist by the FBI, or that Fiore is the subject of a domestic terrorism investigation by the FBI. There will be no reference to Fiore as a domestic terrorist in the government's case-in-chief.[2]

---

[2] Notably, on the surveillance request dated July 1, 2024 referenced in Fiore's response, it asks, "Is the subject of this request considered armed and dangerous or do the circumstances of the case involve a potentially dangerous environment (high-crime locations, known associates, etc.)?" The answer listed is no.

In any event, none of this information is relevant at trial.  *See* Fed. R. Evid. 401. The FBI's prioritization of certain types of threats or offenses has no bearing on Fiore's guilt or innocence. Even if Fiore had been designated as a domestic terrorist as part of an internal FBI threat assessment, it would not make any fact of consequence in this wire fraud prosecution more or less likely. Certainly, the government would be rightly prohibited from arguing that Fiore is more likely to be guilty of fraud because of her general level of dangerousness. Equally, the defense cannot use this imagined designation to claim that she is not guilty of the charges. Allowing any testimony, evidence, or argument about threat banding would only serve to confuse and mislead the jury. *See* Fed. R. Evid. 403. Accordingly, any evidence or argument related to threat banding should be precluded. In addition, Fiore should also be prohibited from claiming without evidence that the FBI has classified her as a domestic terrorist.[3]

Similarly, the Bundy prosecution is also completely unrelated to the charges that Fiore now faces. Fiore is charged in relation to a scheme where she defrauded those who donated funds to build a statue in honor of fallen police officer Alyn Beck. At no time will the government's case-in-chief discuss, mention, or even allude to the Bundy prosecution or Fiore's advocacy on behalf of the Bundys, because it has no probative value or any relationship to whether Fiore is guilty of the offenses charged in the superseding indictment. It is wholly irrelevant, and any mention of the Bundy prosecution would only serve to confuse the issues, mislead the jury, and waste time. The only reason to introduce such

---

[3] Fiore also blamed her purported classification as a domestic terrorist for the "frivolous" and "extreme" "heightened level of security" at the Lloyd D. George Courthouse during calendar call on September 9. ECF 45 at 6. As the Court is well aware, the U.S. Marshals Service, not the FBI, determines the level of security needed to provide for the security of federal court facilities and the safety of judges and other court personnel.

evidence would be for Fiore to seek jury nullification. This Court should preclude any evidence or argument related to the Bundy prosecution and Fiore's advocacy on behalf of the Bundy family.

### 2.   Evidence or argument related to prosecutorial decision-making should be precluded at trial.

Fiore baselessly suggests that this prosecution was brought for improper purposes. *See* Fed. R. Evid. 401, 403. In her response, Fiore notes that an Assistant United States Attorney from the United States Attorney's Office for the District of Nevada was initially involved in investigating misconduct involving Fiore's fundraising activities. ECF No. 45 at 6. Fiore claims that the prosecution should have been transferred to another prosecutor to avoid "potential accusations of impropriety" but failed to recognize that the original and superseding indictments in this matter were presented by prosecutors unrelated to the Bundy prosecution. *Id.* This matter is being prosecuted by a Department of Justice component situated outside of the District of Nevada, and there is no reason to specifically refer to any Assistant United States Attorney in the substance of what may permissibly be put in front of a jury. Any claim that the prosecution was brought for an improper purpose should have been brought in a pretrial motion, but no such motion has been filed.[4] Fed. R. Crim. P. 12(b)(3). In any event, any arguments or evidence related to prosecutorial decision-making, including who decided to prosecute and what to prosecute, are not probative of whether

---

[4] Any motion filed hereafter would be untimely, and the Court could only consider such a motion if Fiore shows good cause. Fed. R. Crim. P. 12(c)(3).

Fiore committed the offenses in the superseding indictment and so should be precluded at trial. *See* Fed. R. Evid. 401.

Moreover, a jury is ill-suited to consider prosecutorial decision-making, which the Supreme Court has held is a determination for the court itself. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Introducing irrelevant evidence or argument about prosecution decision-making will only confuse the jury and waste time. *See* Fed. R. Evid. 403. Accordingly, the government requests that the Court explicitly prohibit any evidence or argument about prosecutorial decision-making, including references to the alleged involvement in decision-making of any specific prosecutors, at trial.

Although Fiore apparently wishes to put forth a claim of prosecutorial vindictiveness at trial, the proper forum for Fiore's claim is in a pre-trial motion. ECF No. 45 at 8–9. The Federal Rules of Criminal Procedure specify that motions related to selective or vindictive prosecution must be made before trial. Fed. R. Crim. Pro. 12(b)(3)(A)(iv). The pre-trial motion deadline has passed, and Fiore failed to make a timely motion. ECF No. 12; Fed. R. Crim. Pro. 12(c)(3). Moreover, any evidence related to prosecutorial vindictiveness would be completely irrelevant to the charges in the superseding indictment and would only serve to confuse the jury. Fed. R. Evid. 401, 403.

For this reason, other courts have banned introduction of such evidence at trial. *United States v. Hawkins*, 979 F.2d 856 (table) (9th Cir. 1992) (upholding the district court's decision precluding defendant from presenting evidence of his selective prosecution claim at trial, because the issue had nothing to do with whether defendant committed the crimes charged and because evidence of selective prosecution could have needlessly confused the jury);

*United States v. Hunter*, 935 F.2d 276 (table) (9th Cir. 1991) (finding that the district court did not err in denying defendant's request to present evidence of vindictiveness at trial when the question of vindictive prosecution was no longer at issue); *United States v. Avery*, No. 2:11-cr-00405-TJH, 2011 WL 13136810, at *2 (C.D. Cal. Dec. 15, 2011) (granting motion to exclude argument toward selective prosecution, which "must be made to the court in pretrial proceedings rather than to the jury"); *United States v. Yagman*, No. 2:06-cr-00227-SVW, 2007 WL 9724391, at *3 (C.D. Cal. May 16, 2007) (precluding defendant from arguing or presenting any evidence of vindictive prosecution at trial in light of clearly established authority). This Court should similarly find that any evidence or argument related to vindictive prosecution should be precluded at trial.

**B.    The Court should admit evidence of the other crimes, wrongs, or acts cited in the government's Rule 404(b) notice.**

Fiore previously filed a motion in limine to exclude any evidence in its Rule 404(b) notice. ECF No. 30. That motion, like this response, only challenged the similarity of the other bad acts to the charged offenses, thereby forfeiting other challenges to its admissibility. *Id.* The government maintains that the similarity requirement is met for the reasons stated in its response. Accordingly, the evidence referenced in the government's Rule 404(b) notice should be admitted at trial.

**C.    Any evidence of good acts would be impermissible character evidence.**

The Federal Rules of Evidence generally prohibit admission of "evidence of a person's character or character trait" to "prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).In criminal cases, however, the defendant can offer evidence of his "pertinent [character] trait." Fed. R. Evid. 404(a)(2)(A). Although the Federal Rules of Evidence do not define the term "character trait," the Ninth Circuit has previously recognized that honesty, truthfulness, law-

abidingness, peaceableness, and being "a violent and angry person" are "character traits" within the meaning of Rule 404(a).[5] But the propensity to engage in specific crimes—as opposed to general law-abidingness—is not an admissible character trait. *United States v. Geston*, 299 F.3d 1130, 1137–38 (9th Cir. 2002); *United States v. Keiser*, 57 F.3d 847, 853 (9th Cir. 1995); *Arizona v. Elmer*, 21 F.3d 331, 334–35 (9th Cir. 1994); *United States v. Diaz*, 961 F.2d 1417 (9th Cir. 1992); *United States v. Hedgecorth*, 873 F.2d 1307, 1313 (9th Cir. 1989); *United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988); *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979).

Under Rule 405(a), "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion," not by evidence of specific conduct. Fed. R. Evid. 405(a); *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987). However, there is an exception for introducing specific instances of conduct where a character trait is an "essential element" of the offense charged or a defense. Fed. R. Evid. 405(b). In that instance, a defendant may introduce evidence of specific acts pertaining to that trait. *Id.* In determining whether the "essential element" requirement is satisfied, "[t]he relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to [general] opinion or reputation." *United States v. Charley*, 1 F.4th 637, 646 (9th Cir. 2021) (quoting *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995)).

Here, the answer is no. Although Fiore has not specified what good character evidence she seeks to admit, any evidence of general good deeds or charitable acts are not

---

[5]

"character traits" at all, much less ones that are an "essential element" of any charge, claim or defense in this case. *See Charley*, 1 F.4th at 646 (victim's propensity for violence was not dispositive to the success of defendant's self-defense claim so was not an essential element); *Keiser*, 57 F.3d at 857 (same). Accordingly, neither Rule 405(a) nor Rule 405(b) permits Fiore to introduce evidence of specific good acts. Moreover, the evidence should be barred by Rule 403, as the danger of confusion and unfair prejudice substantially outweighs the probative value of the evidence cited above. Fiore should thus be precluded from offering evidence of, or referencing in opening or closing, any good acts.

**D.     The Court should order a corrected or supplemented notice of expert discovery and a *Daubert* hearing.**

The need for a corrected or supplemented notice of expert discovery and *Daubert* hearing has not changed, as Fiore may still seek to present Aloian's testimony at trial.[6] To date, the government has not received any information or discovery about Aloian's opinions or the reasons and bases for those opinions. In order to allow the government sufficient time to prepare for trial and to avoid any delays in trial, the Court should order Fiore to file a corrected or supplemented notice of expert discovery. A *Daubert* hearing is also necessary, as Aloian's general experience in public accounting does not provide a reasonable basis for any opinion regarding Section 501(c)(3) entities. However, no *Daubert* hearing is required for any representative from the Nevada Secretary of State, as those witnesses are not being offered

---

[6] In arguing that both the representative from the Nevada Secretary of State and Aloian be subject to *Daubert* hearings, Fiore suggests that she still intends to call Aloian at trial. ECF No. 45 at 14.

as experts and will not be issuing any opinions. Accordingly, the government's motions for the corrected or supplemented notice and the *Daubert* hearing should be granted.

### Conclusion

For the foregoing reasons, the Court should grant the government's omnibus motion in limine.

DATED this 16th day of September, 2024

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice


 /s/ Alexander Gottfried
Alexander Gottfried and Dahoud Askar
Trial Attorneys