# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

  Plaintiff

v.

Michele Fiore,

  Defendant

Case No.: 2:24-cr-00155-JAD-DJA

**Motion in Limine Order**

[ECF Nos. 29, 30, 31]

Former Las Vegas City Councilwoman Michele Fiore's trial on federal wire-fraud and conspiracy charges is scheduled to start on Tuesday.  In preparation for that trial, both sides have filed motions for pretrial decisions to admit or exclude certain evidence or arguments.  Some of those requests require additional discussion, which the court will entertain at the pretrial hearing on Friday.  But the bulk of them are easily resolved on the papers because the law leaves no doubt about whether these items can go to the jury:

- The government's motion to preclude Fiore's vindictive- or selective-prosecution "defense" is granted because that theory is not a legal defense to these charges. While it could have been a proper basis for a pretrial motion to dismiss, Fiore didn't file one, and the deadline to do so has passed.  So the defense is precluded from offering argument or evidence that the government has vindictively or selectively targeted or prosecuted Fiore for her political beliefs or affiliations, labeled her a domestic terrorist, or otherwise acted outrageously.

- The government's request to preclude the defense from encouraging jury nullification is granted because trial courts have a duty to ensure that the jury's verdict is based on the law and the evidence.  So the defense may not introduce

argument or evidence of the government's animus toward Fiore or mention the potential punishment for these offenses or the impact that punishment would have on her.

- The government's motion to preclude the defense from introducing evidence of specific good acts to prove Fiore's good character is granted because character is not an element of these wire-fraud and conspiracy offenses. This ruling does not preclude reputation or opinion evidence that otherwise complies with the Federal Rules of Evidence.

- The court finds that evidence that Fiore converted campaign and political-action-committee donations for her personal use, laundered that money through myriad entities, and falsified campaign-finance reports to conceal that wrongdoing would be admissible under exceptions to Federal Rule of Evidence 404(b). But the court holds in abeyance the ultimate ruling on the admissibility of this other-acts evidence because the prosecution has not yet shown that the evidence is sufficient to support a finding that Fiore committed those alleged acts.

- The defense's motion to exclude the other-acts evidence on the basis that those acts aren't similar enough to the offenses charged is denied because their common theme—that Fiore allegedly used her status as a politician and public figure to raise money for purportedly proper purposes but instead funneled it to herself through various entities—makes them sufficiently similar under the law.

- The defense's motion to preclude Nicole Beck from testifying at trial is denied because her testimony is probative, and the defense has not established that it would be unfairly prejudicial.

- The government's motion for a supplemental disclosure for defense expert, Michael J. Aloian, CPA is granted because the initial notice was woefully inadequate under the Federal Rule of Criminal Procedure 16(b)(1)(C)(iii). The defendant must file an amended notice that complies with that rule by 5 p.m. on Thursday, September 19, 2024.

- And finally, the government's motion for a pretrial evidentiary hearing on Aloian's expert qualifications is denied without prejudice to its ability to raise the issue again during the trial if the defense ultimately decides to call Aloian to testify.

## Background[1]

### A.    Facts alleged in the superseding indictment

In 2014, two Las Vegas Metropolitan Police Department officers, Alyn Beck and Igor Soldo, were killed in the line of duty. A year later, the Las Vegas City Council unanimously approved a measure to build the "Alyn Beck Memorial Park" in the Ward 6 council district, where the Beck family lived. The measure was sponsored by then City Councilman Steven Ross.

Michele Fiore succeeded Ross as Ward 6's councilperson in 2017. At the groundbreaking on the park in late 2018, Fiore proposed that a statue of Officer Beck be commissioned and placed at the park's entrance. The Alyn Beck statue was unveiled at the park's grand opening in 2020.[2]

---

[1] These are only allegations taken from the superseding indictment (ECF No. 19) and should not be construed as findings of fact.

[2] *See* ECF No. 19 at 3–5, ¶¶ 16–22.

The government theorizes that Fiore used the statue as a pretext to defraud well-intentioned donors by soliciting contributions and "represent[ing] . . . that their contributions would be used to fund" the Beck statue or another memorial to the fallen officers.[3]  Those representations were false, the government avers, because the statue had already been paid for by a real-estate-development company unrelated to Fiore, and she knew it.[4]  The scheme netted "tens of thousands of dollars," which Fiore funneled from the bank accounts associated with her charitable organization and political-action committee (PAC) "into different bank accounts, including accounts controlled by" Fiore, a co-conspirator, and a private company owned by the co-conspirator.[5]  Fiore then used that money to pay for "her own personal expenses, including rent for [her] personal residence, payments to [a company she owns] for political fundraising services, and payments for her daughter's wedding."[6]  Based on these allegations, the grand jury indicted Fiore on six counts of wire fraud and one count of conspiracy to commit wire fraud.[7]

**B.    The parties' motions in limine**

In anticipation of the trial scheduled to begin next week, both sides have filed motions for pretrial evidentiary rulings.  The prosecution moves to admit evidence of other instances in which Fiore allegedly converted political-campaign funds for her personal use, laundered those funds through companies that she and her co-conspirator owned, and falsified campaign-finance reports to conceal her use of those funds.[8]  It argues that those other bad acts are admissible

---

[3] ECF No. 19 at 6, ¶ 26.

[4] *Id.* at 4, ¶ 19.

[5] *Id.* at 6, ¶¶ 26, 28.

[6] *Id.* at 6, ¶ 27.

[7] *Id.* at 5–11.

[8] ECF No. 23; ECF No. 29 at 7–8.

because they are inextricably intertwined with the charged offenses, or they are admissible under Federal Rule of Evidence (FRE or Rule) 404(b) to prove intent and knowledge.[9]   The defense opposes the prosecution's request and countermoves to exclude that bad-acts evidence, arguing that it isn't similar enough to the charges in the superseding indictment.[10]   It separately moves to exclude the testimony of Alyn Beck's widow Nicole Beck as unfairly prejudicial under FRE 403.[11]

The government also seeks to preclude Fiore "from arguing or otherwise presenting evidence or pursuing lines of inquiry designed to elicit or encourage jury nullification," contending that past statements suggest that the defense will attempt to argue that Fiore is merely a victim of a vindictive prosecution due to her political views and advocacy on behalf of the Bundy family (a group that has had run-ins with the federal government in the past).[12]   The prosecution further moves to exclude "evidence of specific instances of purported good acts as circumstantial proof that [Fiore] did not commit the charged offenses"[13] and seeks a supplemental disclosure and *Daubert* hearing for Fiore's potential expert witness, Michael J. Aloian, CPA.[14]   The parties filed responses, and I ordered them to also file replies in support of their respective motions.[15]   The prosecution filed a reply in support of its omnibus motion;[16] the defense did not.

---

[9] ECF No. 23.

[10] ECF No. 30.

[11] ECF No. 31.

[12] ECF No. 29 at 3–7.

[13] *Id.* at 8.

[14] *Id.* at 10.

[15] ECF No. 47.

[16] ECF No. 50.

1                                    **Discussion**

2          "A motion in limine is a procedural mechanism [that is used] to limit in advance" of trial

3   the scope of "testimony or evidence in a particular area" that will be permitted at trial.[17]   Though

4   not explicitly authorized by the Federal Rules of Evidence, the practice of ruling in limine on

5   evidentiary issues is based on the "district court's inherent authority to manage the course of

6   trials."[18]   "However, in limine rulings are not binding on the trial judge, . . . the judge may

7   always change [her] mind during the course of a trial,"[19] and "[a] motion in limine is not the

8   proper vehicle for seeking a dispositive ruling on a claim" or defense.[20]

9   **A.      Fiore's motion to exclude evidence of other bad acts is denied, and a ruling on the
            government's request to admit that evidence is held in abeyance pending further
10           proof of admissibility under Rule 404(b).**

11          Federal Rule of Evidence 404(b)(1) generally bars "[e]vidence of any other crime, wrong,

12   or act . . . to prove" a defendant's character in order to show that she "acted in accordance with

13   [that] character" on a particular occasion.   But there are two exceptions to this rule of wholesale

14   exclusion of other-bad-acts evidence in the Ninth Circuit.   The first is found in FRE 404(b)(2),

15   which permits evidence of "any other crime, wrong, or act" to prove "motive, opportunity,

16   intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[21]   The

17   second derives from a judicially created doctrine that allows bad-acts evidence that is so

18   "inextricably intertwined with the crime" that it can be admitted for a purpose other than proving

19

20   ───────────────────

[17] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009).

21   [18] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

22   [19] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (emphasis omitted) (citing *Luce*, 469
     U.S. 41–42).

23   [20] *Hana Financial, Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

     [21] Fed. R. Evid. 404(b)(1)–(2).

any of the enumerated elements in Rule 404(b).[22]  These two exceptions often overlap so much that some circuits have retreated from the inextricably-intertwined rule entirely.[23]  But in the Ninth Circuit, the prosecution may rely on either or both to justify introducing other-bad-acts evidence.

In August, the government filed a notice of its intent to introduce four categories of other-bad-acts evidence under Rule 404(b): "(1) the conversion of funds donated to Fiore's City Council campaign for political purposes to her personal use; (2) the conversion of funds donated to Fiore's [PAC] for political purposes to her personal use; (3) Fiore's laundering of stolen funds through entities controlled by Fiore and her relatives; and (4) Fiore's false statements on her campaign finance reports concealing how she spent the stolen funds."[24]  The government contends that this evidence meets either exception to the bad-acts exclusion because it is "inextricably intertwined" with Fiore's wire-fraud conspiracy charge and can also be admitted under Rule 404(b)(2) to prove her intent and knowledge.[25]  For her part, Fiore moves to exclude the evidence, arguing that the alleged acts the government identifies aren't sufficiently similar to

---

[22] *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016) (holding that "[t]he inextricably intertwined doctrine . . . affords a second basis for concluding [that] the evidence should not be treated as 'other' crimes or 'other' acts evidence under Rule 404(b)").

[23] *See, e.g.*, *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) (holding that "the inextricable intertwinement doctrine has outlived its usefulness" and that "resort to inextricable intertwinement is [no longer available] when determining a theory of admissibility"); *United States v. Green*, 617 F.3d 233, 247 (3d Cir. 2010) (declining to adopt the inextricably intertwined doctrine, noting that "[t]here is little practical difference between admitting inextricably intertwined evidence . . . and admitting it under Rule 404(b)").

[24] ECF No. 23 at 3 (the government's sealed 404(b) notice); *see also* ECF No. 29 at 7–8 (the government's publicly available motion in limine).  Because I don't discuss the details of these other acts beyond what is disclosed in public filings, and because this evidence will be admissible at trial, I find that an order sealing this discussion of the government's proposed other-acts evidence is not legally supported.

[25] ECF No. 23 at 7.

1  those charged in the superseding indictment and that their admission would cause unfair

2  prejudice.[26]

3

4  **1.  *The other-acts evidence showing the path of Fiore's funds is inextricably intertwined with the charged crimes.***

5  The government first argues that evidence of other instances in which Fiore converted

6  funds for her personal use and laundered money through entities she and her relatives controlled

7  isn't barred by 404(b)'s "other crimes" exclusion because it is inextricably intertwined with the

8  wire-fraud conspiracy charged in the superseding indictment.[27]  "There are generally two

9  categories of cases in which" the Ninth Circuit has "concluded that 'other act' evidence is

10  inextricably intertwined with the crime with which the defendant is charged and therefore need

11  not meet the requirements of Rule 404(b)."[28]  The first is when the bad act "constitutes a part of

12  the transaction that serves as the basis for the criminal charge."[29]  The second is when other-bad-

13  acts evidence is needed "to permit the prosecutor to offer a coherent and comprehensible story

14  regarding the commission of the crime."[30]

15  The Ninth Circuit has stressed that "it is obviously necessary in certain cases for the

16  government to explain either the circumstances under which particular evidence was obtained or

17  the events surrounding the commission of the crime."[31]  For both categories, "[t]here must be a

18  sufficient contextual or substantive connection between the proffered evidence and the alleged

---

[26] ECF No. 30.

[27] ECF No. 23 at 7; ECF No. 44 at 6.  Fiore doesn't respond to this argument.

[28] *Loftis*, 843 F.3d at 1177 (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)).

[29] *Id.* at 1178 (quoting *Vizcarra-Martinez*, 66 F.3d at 1012).

[30] *Vizcarra-Martinez*, 66 F.3d at 1012–13.

[31] *Id.* at 1013.

crime to justify exempting the evidence from the strictures of Rule 404(b)."[32]  "In determining whether particular evidence is necessary to the prosecution's coherent and comprehensible story, [courts] ask whether the evidence bears directly on the charged crime."[33]

The government relies primarily on the second, coherent-story category in seeking to admit evidence of Fiore's "use and conversion of funds from the entities that are part of the charged wire fraud scheme."[34]  It asserts that, although the indictment concerns Fiore's conversion of funds from her PAC and charitable foundation that were raised for the purported purpose of funding the Beck statue, evidence of her similar fraudulent conduct involving those and other bank accounts "is necessary to offer a coherent story of the crime."[35]  According to the government, "Fiore collected funds for the statue not only in the bank account for her charity but also in the bank account for her [PAC] and then transferred funds to the bank accounts for other entities she controlled, including her campaign, political consulting company, and magazine company."[36]  The government asserts that it will attempt to prove that Fiore devised a scheme to defraud her donors "by showing that she failed to spend [their] money on what she promised she would" (i.e., the Beck statue), and the only way to prove that is to show that "no money" from the PAC or charity "was used for that purpose."[37]  It just so happens, says the government, that much of the fungible money in those accounts that can't be traced to a statue donation was also illicitly spent for Fiore's private purposes.

---

[32] *Id.*

[33] *United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018) (cleaned up).

[34] ECF No. 23 at 8.

[35] *Id.*

[36] ECF No. 44 at 7.

[37] ECF No. 23 at 8 (cleaned up).

Evidence of Fiore's use and transfer of funds between her various bank accounts is inextricably intertwined with the charged conduct and may be admitted for the purpose of telling a coherent story.  This evidence bears directly on the charged crime: by showing where the money taken from Fiore's PAC and charity went, the government can prove that none of the money raised went to its stated purpose.  So I find that the other-bad-acts evidence that the government seeks to introduce is admissible to the extent it shows that Fiore did not utilize any money to fund the Beck statue.[38]

But this reasoning and ruling do not extend to the government's desire to introduce evidence that Fiore purportedly falsified campaign-finance reports.  The prosecution has not shown that such evidence is required to tell a coherent story of Fiore's misuse of funds as charged in the complaint.  So in order for the government to introduce that evidence, and to show that evidence of each of Fiore's other bad acts can be used for reasons other than telling a coherent story, the government must show that it is admissible under Rule 404(b)(2).

### 2. The other-acts evidence may come in under Rule 404(b)(2) if the prosecution can show that the evidence is sufficient to support a finding that Fiore committed those other acts.

The government contends that evidence of other instances in which Fiore allegedly converted donor money to her own personal use and falsified campaign-finance reports to hide that conversion would help prove that she acted knowingly and with the intent to deceive the statue donors, so it's admissible under the FRE 404(b)(2) exception.[39]  The Ninth Circuit has developed a four-part test to determine the admissibility of evidence under this rule.  Other-acts evidence "may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is

---

[38] I also consider this evidence as direct proof of the charged offense, which supports its admissibility under the first category of evidence that satisfies the inextricably-intertwined test.

[39] ECF No. 23 at 10.

not too remote in time; (3) the evidence is sufficient to support a finding that [the] defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged."[40] The government bears the burden of satisfying all four requirements, and "[i]f the evidence meets this test . . . , the court must then decide whether [its] probative value is substantially outweighed by [its] prejudicial impact under Rule 403."[41]   Rule 404(b) is a "rule of inclusion," so evidence of other crimes is admissible unless "it tends to prove *only* criminal disposition."[42]

### a.    The other acts are similar to the offenses charged.

Fiore challenges only the fourth prong of the 404(b)(2) test, arguing that the charges against her are centered on her alleged misrepresentations related to fundraising for the Beck statue and, because the other acts don't involve those same misrepresentations, they lack "the level of similarity needed to introduce such potentially prejudicial evidence at trial."[43]   But other acts need only be similar, not identical.   Here, although topics of the misrepresentations may have been different (e.g., seeking donations for a statue versus seeking donations to run a political campaign), the modus operandi and intent behind Fiore's alleged other acts and the acts charged are substantially similar: Fiore allegedly used her status as a public figure to raise money for political purposes but instead funneled that money to herself and her co-conspirator through the various entities they controlled.

The Ninth Circuit has found less similar offenses sufficient to satisfy the fourth factor. For example, in *United States v. Ayers*, the defendant was charged with conspiracy to evade his

---

[40] *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)).

[41] *Id.* (quoting *Romero*, 282 F.3d at 688).

[42] *United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir. 1991) (cleaned up).

[43] ECF No. 30 at 4.

tax obligations, and the indictment alleged that, in furtherance of that conspiracy, he "purchased numerous cashiers checks in amounts less than $10,000"—the threshold above which banks must notify the IRS—in order to "conceal large amounts of cash from the government."[44]  Other-acts evidence that the defendant paid women to carry suitcases full of cash from California to Miami, and that he submitted a false customs declaration understating the amount of cash he was carrying on an international trip were deemed similar enough to his charged offenses because they were "also acts [that] conceal the ownership of cash from the government."[45]

The delta between the other-acts evidence that the government intends to introduce here and the charged offenses is even smaller than that in *Ayers.*  The superseding indictment charges Fiore with soliciting donations with the intent to defraud her donors and use the proceeds for personal gain.  Fiore's alleged use of campaign and PAC funds for personal gain, efforts to launder the money through entities she controlled, and falsification of campaign-finance reports are also alleged acts involving defrauding donors for her personal gain.  So I find that the other acts that the government seeks to introduce are similar enough to satisfy the fourth prong of the 404(b)(2) test.

Even if the other-acts evidence wasn't sufficiently similar to the charged acts, it would be admissible under Rule 404(b)(2) for the additional reason that it is probative of Fiore's mens rea.  "When used to prove knowledge, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence."[46]  So in *United States v. Fuchs*, the Ninth

---

[44] *Ayers*, 924 F.2d at 1474.

[45] *Id.*

[46] *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000) (cleaned up).

1  Circuit affirmed the district court's admission of tax returns showing that the defendant was

2  attempting to conceal income from an illicit scheme as proof that he knew his actions were

3  illegal.[47]   Here, the government similarly seeks to admit evidence showing that Fiore purposely

4  falsified campaign-finance reports and laundered money through conduit entities in order to

5  prove her knowledge that the conversion of donor funds is illegal, making it admissible under

6  Rule 404(b)(2).

7
8  **b.     The other acts are material and temporally proximate to the offenses charged.**

9       The government has also satisfied the first and second prongs of the 404(b) test.  This

10  other-acts evidence is material because it tends to prove Fiore's state of mind, her intent to

11  defraud, and her knowledge that her statements about how she would use the funds were false.[48]

12  Evidence that Fiore had a history of illegally converting donor funds would be probative of her

13  knowledge of the scheme and her intent to defraud.  And proof that she covered up that activity

14  by funneling the money through various conduit entities and falsified campaign-finance reports

15  would tend to show her awareness that such conduct was illegal.

16       I find that those other alleged acts are also not too remote in time.  Many of the other acts

17  overlap with the charged conduct, so those clearly aren't too remote.  And the rest occurred

18  between 2015 and 2020, while the charged offenses took place between 2019 and 2020.  The

19  Ninth Circuit has found that acts committed even as much as 10 to 13 years before the charged

20
21
22  [47] *Id.*

23  [48] *Ayers*, 924 F.2d at 1473 ("[A]cts both prior and subsequent to the indictment period may be probative of the defendant's state of mind." (quoting *United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981))).

1   offense were not too remote to satisfy this factor.[49]  So the approximately four-year gap between

2   the oldest other act and the charged offenses is not too remote under the law of this circuit.

3

4           **c.**     **The government must make a preliminary showing that its evidence is sufficient to support a finding that Fiore committed the other acts.**

5           While I find on the papers that these categories of other-bad-acts evidence that the

6   government intends to present at trial are not precluded by FRE 404(b)(1), that ruling assumes

7   that the government can prove that these alleged bad acts occurred.  So the prosecution must

8   clear one more hurdle before that evidence can come in: demonstrating that it can prove that

9   Fiore committed these alleged bad acts.  The United States Supreme Court has held that

10  sufficient proof exists "if the jury can reasonably conclude that the act occurred and that the

11  defendant was the actor."[50]  This is a "low threshold,"[51] and the testimony of even a single

12  witness can clear it.[52]

13          It's likely that the government's anticipated "bank records, public records, and witness

14  testimony"[53] will reach the low bar that this factor erects.  But because that evidence has not yet

15  been presented or described to this court in any detail, I cannot yet conclude that it does.  So I

16  hold in abeyance my final ruling on the applicability of Rule 404(b) to include all of the other-

17  bad-acts evidence that the government wishes to introduce until the pretrial hearing set for

18

---

19  [49] *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (noting that the Ninth Circuit has "found that a thirteen-year-old conviction is not too remote to be admitted under [Rule] 404(b)");

20  *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (holding that conviction that was "over ten years old" was not too remote).

21  [50] *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

22  [51] *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir. 1990), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59, 64–66 (2001).

23  [52] *See United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994).

[53] ECF No. 23 at 12.

Friday, September 20, 2024.  At that hearing, the government must be prepared to provide an offer of proof to support the finding that Fiore committed these acts.

### d.     *Fiore hasn't shown that the other-bad-acts evidence is excludable under FRE 403.*

Before presumptively admitting other-bad-acts evidence, the court must also determine that it is not excludable under FRE 403.  That evidentiary rule authorizes courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[54]  District courts have "considerable latitude [when] performing a Rule 403 balancing test."[55]

The defense states, without elaboration, that "[t]here is significant risk of unfair prejudice here."[56]  But the other-acts evidence is highly probative of Fiore's intent and knowledge, and Fiore doesn't explain why any prejudice she might suffer from that evidence outweighs its probative value—let alone substantially so, as required to preclude it.  So I find that the other-acts evidence is not excludable under Rule 403.[57]

---

[54] Fed. R. Evid. 403.

[55] *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (citing *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991)).

[56] ECF No. 30 at 5.

[57] As a final swipe at this bad-acts evidence, Fiore implies that, because the government did not charge her with these acts, they should be excluded.  *See* ECF No. 30 at 3 (arguing that the FBI created charts in 2021 "documenting the improper use of campaign and/or PAC funds for rent and other personal expenses" and asking, "So why would the [g]overnment not indict when it discovered evidence of the very thing it was looking for?").  But she cites no authority for this proposition, and her assertion is belied by the fact that Rule 404(b), the inextricably-intertwined doctrine, and the Rule 403 balancing test all set the standards for the introduction of uncharged bad acts.

1

2    **B.      Nicole Beck's testimony is material to this trial, so Fiore's motion to exclude it is denied.**

3        Among the prosecution's listed witnesses is Officer Alyn Beck's widow Nicole.[58]  The

4   defense moves to exclude Nicole's testimony under FRE 403, arguing that she "does not have

5   personal information regarding the purchase or fundraising of" the statue, so her testimony

6   "offers no value to a jury regarding the [g]overnment's charges."[59]  Fiore characterizes the

7   prosecution's intent to put Nicole on the stand as "nothing more than [the desire] to inflame both

8   the public as well as the jury against" her.[60]  She also insists that any information Nicole does

9   have can be introduced through less incendiary witnesses.[61]

10       The government elaborates that Nicole is expected to testify about the events leading up

11  to Fiore's involvement in the Alyn Beck Memorial Park and her interactions with Fiore after

12  Fiore announced her idea to build a statue there.[62]  It asserts that Nicole is one of the only

13  witnesses available to testify about how the park came to be, since former Councilman Steven

14  Ross—who worked with Nicole throughout the initial development of the park—is deceased.[63]

15  Nicole will also testify that she was not involved in any fundraising efforts concerning the park

16  or the statue, that Fiore didn't tell her she was fundraising for that purpose, and that Fiore didn't

17  directly communicate with her during the relevant time period.[64]

18

_____

19  [58] ECF No. 39 at 2.  Because Alyn and Nicole share a last name, I refer to Nicole by her first name for clarity's sake.  No disrespect is intended by doing so.

20  [59] ECF No. 31 at 2.

21  [60] *Id.*

    [61] *Id.*

22  [62] ECF No. 43 at 2–3.

23  [63] *Id.* at 4.

    [64] *Id.* at 4–5.

Nicole's anticipated testimony is probative.  She can provide crucial background for the jury about how the park and the statue came to be and when Fiore's involvement in that process began.  She can also provide circumstantial evidence of Fiore's intent to defraud her donors.  As the government explains, "the fact that Fiore never consulted [Nicole] about her feelings about the statue, and the fact that she rarely interacted with her throughout the process, provides circumstantial evidence that Fiore's true motive was not to honor" Nicole's late husband.[65]  That Fiore never told Nicole that she was fundraising for the statue is also circumstantial evidence of Fiore's knowledge that she was engaging in an illegal act.  As the government succinctly puts it, "[h]ad Fiore disclosed her extensive fundraising efforts to [Nicole], and had [Nicole] learned that Fiore had not actually contributed any money toward the statue as she promised donors, [Nicole] could have exposed Fiore's fraud."[66]

Fiore has not shown that the probative value of Nicole's testimony will be substantially outweighed by a risk of unfair prejudice.  The defense argues that questioning Nicole will "invoke[e] the predictable emotional response of a widow."[67]  But the fraud scheme that Fiore is accused of naturally lends itself to some emotional testimony.  Given that Fiore chose this backdrop for her alleged fraud, it cannot be said that the prejudice from those sympathy-inducing details is unfair, let alone substantially so.  I thus deny Fiore's motion to exclude the testimony of Nicole Beck.

---

[65] *Id.* at 4.

[66] *Id.* at 4–5.

[67] ECF No. 31 at 2.

**C.      Fiore may not introduce evidence or argument related to any vindictive- or selective-prosecution theory or jury-nullification effort.**

The government also anticipates that Fiore will attempt to introduce evidence or argument in the form of:

- Evidence or argument about the federal prosecutions related to the Bundy ranching family, and/or the defendant's public advocacy on their behalf;

- Evidence or argument related to the decision of the United States Attorney's Office for the District of Nevada, including any individual prosecutor in that office, to participate or not participate in the instant investigation and prosecution;

- Evidence or argument about decisions by state and local authorities whether to investigate or prosecute the misconduct charged in the superseding indictment; or

- Argument that the defendant was selectively or vindictively prosecuted based on her political beliefs or her views about federal law enforcement.[68]

The vigor with which Fiore opposes this exclusion request suggests that the government correctly anticipated at least one aspect of her concept of a planned defense. Though her theory is difficult to follow, it appears that Fiore believes that the federal government classified her as a "domestic terrorist" because of her association with the "Bundy ranching family."[69] She claims that this designation allowed the prosecution to "deliberate[ly] deny due process guardrails in

---

[68] *Id.* at 5. The government also anticipates that the defense might proffer "evidence of charitable works performed by [Fiore] unrelated" to the charity and PAC at the center of the indictment, along with "argument regarding the potential sentence that the defendant might receive, including in light of her age." *Id.* The defense concedes that arguments about potential sentences are improper, so I grant that portion of the motion. And I address evidence of Fiore's prior good acts *infra* at § D.

[69] ECF No. 45 at 5–7 (cleaned up).

18

purported investigations of campaign finance violations."[70]  Fiore also notes that a federal

government employee involved in one of the Bundys' criminal cases, which she explains was

dismissed with prejudice following "flagrant prosecutorial misconduct" for withholding *Brady*

evidence, also participated in the investigation into her.[71]  She argues that being unable to

mention any of this "evidence of vindictiveness" or evidence of the government's "frivolous

designations of domestic terrorist" to the jury would eviscerate her due-process rights and gut her

ability to mount a complete defense.[72]

The prosecutors respond that they are unaware of any such "domestic terrorist" label and

attribute Fiore's assertions otherwise to a misunderstanding of the threat-level bands that the FBI

uses when conducting surveillance during investigations.[73]  I need not—so do not—address this

factual dispute because even if I accept Fiore's version of events, clearly established law

prevents her from raising these issues at trial.

### 1. Fiore's vindictive-prosecution theory should have been raised in a pretrial motion.

Fiore cannot raise a defense based on evidence of, or argument about, vindictive

prosecution at trial.  The proper procedure for asserting that theory is to file a pretrial motion to

dismiss under Federal Rule of Criminal Procedure 12(b)(3)(A)(iv).[74]  The deadline to do that was

---

[70] *Id.* at 1–2.

[71] *Id.* at 4 n. 2.

[72] *Id.* at 9 (cleaned up).

[73] ECF No. 50 at 3.

[74] Fed. R. Crim. P. 12(b)(3)(A)(iv) (stating that a defense based on "a defect in instituting the prosecution, including . . . selective or vindictive prosecution" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits").  The premise of this "defense" has been known to Fiore since the Bundy

August 19, 2024,[75] and Fiore neither filed such a motion nor asked to extend the deadline to do so.  And while she claims that she "has a due process right to present evidence of prosecutorial vindictiveness under"[76] *United States v. Jenkins*, the test articulated in *Jenkins* (and applied in every other case Fiore cites) governs pretrial motions to dismiss on those grounds,[77] which only further confirms that the proper vehicle for a vindictive-prosecution theory is a pretrial motion to dismiss, which Fiore elected to forego here.  She can't make up for that failure by turning the theory into a defense at trial.

### 2.    *Vindictive or selective prosecution is not a defense that can be raised at trial.*

The reason that the law bars a defendant from presenting a vindictive- or selective-prosecution theory at trial is that it isn't a true defense to the crime charged.  As the United States Supreme Court explained in *United States v. Armstrong*, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."[78]  Other circuits have held that such a defense "is one to be determined by the court, as it relates to an issue of law

---

trial in 2018, and she makes no effort to show that such a motion to dismiss could not have been resolved by the court.

[75] *See* ECF No. 12 at 1 (the deadline for pretrial motions was 30 days after the date of the pretrial order, which was entered on July 19, 2024).

[76] ECF No. 45 at 8 (cleaned up).

[77] *See United States v. Jenkins*, 504 F.3d 694 (9th Cir. 2007) ("The district court granted Jenkins's motion to dismiss the indictment."); *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011) ("The parties next appeared before the district court to present argument as to whether . . . information should be struck for prosecutorial vindictiveness."); *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1166 (9th Cir. 1982) ("The district court dismissed a felony indictment for illegal entry on the ground of presumed vindictiveness. . . .").

[78] *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see also United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (applying *Armstrong's* reasoning to a vindictive-prosecution claim).

1    entirely independent of the ultimate issue of whether the defendant actually committed the

2    crimes for which she was charged."[79]

3         Tellingly, Fiore points to no case in which a court allowed a criminal defendant to raise

4    vindictive prosecution as a defense at trial.  Instead she theorizes that evidence of prosecutorial

5    vindictiveness comes under the umbrella of her right to present a complete defense.[80]  But "[a]

6    defendant's right to present evidence in support of [her] defense . . . is not without limits."[81]

7    "'While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve

8    no legitimate purpose or that are disproportionate to the ends that they are asserted to promote,

9    well-established rules of evidence permit trial judges to exclude evidence' that is irrelevant,

10   lacking in foundation, or when 'its probative value is outweighed by certain other factors such as

11   unfair prejudice, confusion of the issues, or potential to mislead the jury.'"[82]

12        Fiore's affiliation with the Bundy family and her beliefs that she was classified as a

13   domestic terrorist and selectively targeted for prosecution are irrelevant to the question that this

14   trial will attempt to answer: whether Fiore defrauded donors to the Alyn Beck statue project.

15   This vindictiveness evidence has no probative value whatsoever to show that she did not commit

16   the offenses that she stands accused of, and allowing its introduction would confuse the issues

17   and mislead the jury.  Because these vindictive- and selective-prosecution theories are not a

18

19   ───────────────

20   [79] *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (cleaned up); *see also United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995) ("The selective prosecution defense is an issue for the court to decide, not an issue for the jury.").  That reasoning equally applies to a

21   vindictive-prosecution defense, and I am persuaded by the out-of-circuit authority relegating that determination to the judge, not the jury.

22   [80] ECF No. 45 at 2–3.

23   [81] *United States v. Espinoza-Baza*, 647 F.3d 1182, 1188 (9th Cir. 2011).

     [82] *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)).

defense to the crimes that Fiore is charged with, precluding her from raising them at trial will not deprive Fiore of her right to present a complete defense.

So, in sum, Fiore cannot introduce evidence or argument related to her involvement with the Bundy family or the government's alleged bias against her because of that involvement; the government's alleged classification of Fiore as a "domestic terrorist"; or any reference to prosecutorial decision-making or the actions of any specific prosecutors that may or may not have worked on this case. I note, however, that this ruling does not preclude Fiore from asking questions of government witnesses designed to show that an individual witness personally harbors animus or bias against her in an attempt to impeach the witness's personal credibility. The right to do so is protected by the Sixth Amendment's confrontation clause.[83] But because that right does not allow a defendant to question a prosecutor's motives or exercise of discretion in front of the jury, I grant the government's motion to preclude any vindictive- or selective-prosecution argument or defense at trial.

### 3.   *Fiore is precluded from making points intended to encourage jury nullification.*

The term "jury nullification" refers to "the de facto ability of the jury to refuse to apply the law as instructed by the court, choosing instead 'to acquit out of compassion or compromise or because of the jury's assumption of a power [that] they had no right to exercise, but to which they were disposed through lenity.'"[84] In its omnibus motion in limine, the prosecution expresses its concern that Fiore will attempt to use arguments or evidence of alleged government

---

[83] *Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011) ("Adequate cross-examination entails not only the right to ask the witness whether he was biased, but also the right to make a record from which to argue why the witness might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." (cleaned up)).

[84] *United States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1108 (E.D. Cal. 2008), *aff'd sub nom. United States v. Montes*, 421 F. App'x 670 (9th Cir. 2011) (quoting *Standefer v. United States*, 447 U.S. 10, 22 (1980) (cleaned up)).

animus toward her as a way to encourage jury nullification.[85]  Fiore responds that, while the jury does not have the right to nullify, it does have that power, and an acquittal resulting from nullification is still valid.[86]

Those statements may be true, but they miss the larger point.  "[N]ullification is, by definition, a violation of the juror's oath to apply the law as instructed by the court."[87]  "Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant."[88] So "trial courts have the duty to forestall or prevent such conduct, whether by firm instruction or admonition . . . ."[89]  To the extent that a trial court can prevent jury nullification by proactively precluding argument or evidence designed to elicit jury nullification, it has a duty to stop it.  The government's motion to preclude this type of evidence and argument is thus granted.

**D.     The Federal Rules of Evidence bar Fiore from introducing evidence of specific good acts to prove non-propensity.**

The government also seeks to prevent the defense from introducing "evidence of specific instances of purported good acts as circumstantial proof that [Fiore] did not commit the charged offenses."[90]  The defense insists that, because "the [g]overnment classified [her] a [d]omestic

---

[85] ECF No. 29 at 3–7.

[86] ECF No. 45 at 3–4.  Fiore also notes that the court may not instruct the jury in a manner suggesting that jurors could be punished for nullification or that an acquittal resulting from nullification is invalid.  *Id.* (citing *United States v. Kleinman*, 880 F.3d 1020 (9th Cir. 2017)). The prosecution doesn't presently seek this instruction, so I reserve any such ruling for the charge conference.

[87] *United States v. Lynch*, 903 F.3d 1061, 1079 (9th Cir. 2018) (cleaned up).

[88] *Zal v. Steppe*, 968 F.2d 924, 930 (9th Cir. 1992), *as amended* July 31, 1992 (Trott, J., concurring) (emphasis deleted).

[89] *Merced v. McGrath*, 426 F.3d 1076, 1080 (9th Cir. 2005) (quoting *United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997)); *see also Kleinman*, 880 F.3d at 1031.

[90] ECF No. 29 at 8.

[t]errorist," Fiore "has an absolute right to provide admissible evidence of non-propensity in this case."[91]  It further argues that this alleged label, as well as the government's word choice in its motion,[92] have "inflamed the public" and "colored the opinions of potential jurors," leaving "no way for [her] to defend herself before trial."[93]  Fiore baldly contends that, in this context, she "is entitled to present admissible evidence of character that addresses any of the charges, claims[,] or defenses in this case."[94]

Although the Federal Rules of Evidence permit admissible evidence of character, they greatly limit the type of character evidence that can come in.  As both Fiore and the government acknowledge, Rule 404(a)(1) explains that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."[95]  Rule 404(a)(2) carves out an exception to this general rule in criminal cases: "a defendant may offer evidence of [her] pertinent trait" to support an inference that she did not commit the crime charged.[96]  But Rule 405 restricts the type of character evidence allowed by the 404(a)(2) exception to "testimony about the person's reputation" or "testimony in the form of an opinion" on direct examination.[97]  A defendant can exceed those limits with proof of specific acts only if her "character or character trait is an essential element of a charge, claim,

---

[91] ECF No. 45 at 11.

[92] Fiore highlights to the government's use of the phrases "brazen example" and "tragedy of Officer Beck's murder" as attempts to denigrate her reputation and character.  *Id.*

[93] *Id.*

[94] *Id.* at 12.

[95] Fed. R. Evid. 404(a)(1).

[96] Fed. R. Evid. 404(a)(2)(A).

[97] Fed. R. Evid. 405(a).

or defense."[98]  And that happens only when "proof, or failure of proof, of the character trait by itself actually satisf[ies] an element of the charge, claim, or defense."[99]

Character is not an element of a charge or defense in this case, and Fiore doesn't demonstrate that it is.  Instead, she wants to introduce specific acts showing that she has a good character to negate the intent element of her charges, broadly arguing that the "requisite mens rea on each and every one of the [c]ounts" is an "essential element" for the purposes Rule 405.[100] But Fiore's assertion that a defendant's attack on the motive or intent element makes character an essential element of the case has been rejected by at least two circuit courts.  In *United States v. Camejo*, the Eleventh Circuit rejected a defendant's argument that evidence of his specific good acts were admissible because "one of the essential elements of [his cocaine-importation conspiracy charge] was his mens rea during the time he was alleged to have agreed to join this conspiracy."[101]  The court reasoned that "evidence of good conduct is not admissible to negate criminal intent."[102]  And in *United States v. Marrero*, the defendant argued that good-acts evidence was essential to prove her "defenses of lack of intent and lack of motive."[103]  The Fifth Circuit disagreed, explaining that "[s]uch a tactic is not only disfavored, it is not permitted under

---

[98] Fed. R. Evid. 405(b); *see also* Fed. R. Evid. 405(b) advisory committee notes ("[T]he rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry.  When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation or opinion.").

[99] *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).

[100] ECF No. 45 at 12 (cleaned up).

[101] *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (cleaned up).

[102] *Id.*

[103] *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990).

Rule 405(b)."[104]  Fiore hasn't explained how her mens rea defense differs from those in *Camejo* or *Marrero* such that this court should depart from those persuasive holdings.

The limited success that such arguments have had in the Ninth Circuit also show that Fiore's good-acts evidence is inadmissible.[105]  The narrow Rule 405(b) exception for good acts has been reserved for cases in which proof of character is required to prove or defend against the crime, like defamation or entrapment.[106]  For example, the Ninth Circuit held in *United States v. Thomas* that good-acts evidence can be introduced in entrapment cases because,  when that defense is asserted against a charge that arises out of a sting operation, the government must prove beyond a reasonable doubt that the defendant "was predisposed to engage in" the manufactured criminal activity.[107]  Thus, good-acts evidence showing that the defendant is not so predisposed becomes essential to proving the defense.[108]

This is not a case in which a showing of predisposition or character is required to prove or disprove any element of the wire-fraud and conspiracy charges Fiore is facing.  Nor has the defense identified any particular good act that could negate an element of those charges.  So I

---

[104] *Id.*

[105] *See, e.g.*, *United States v. Barry*, 814 F.2d 1400, 1403 n.6 (9th Cir. 1987) (distinguishing essential elements related to a defendant's state of mind and those related to a defendant's character, and noting that a state-of-mind defense would not justify the introduction of good-acts evidence under Rule 405(b) (citing *United v. Donoho*, 574 F.2d 718, 720 (9th Cir. 1978), *vacated on other grounds by* 439 U.S. 811 (1978)).

[106] *See United States v. Thomas*, 134 F.3d 975, 979 (9th Cir. 1998) (holding that character is an essential element of an entrapment defense); *United States v. Piche*, 981 F.2d 706, 713 (4th Cir. 1992) (noting that specific acts of good character may be admitted only if "character is in issue in the strict sense, which occurs [when] a material fact that under the substantive law determines rights and liabilities of the parties, such as the plaintiff's reputation for honesty in a defamation action" (cleaned up)).

[107] *Thomas*, 134 F.3d at 979.

[108] *Id.*

1  grant the government's motion to bar evidence of Fiore's specific good acts.  This ruling does

2  not preclude Fiore from introducing in her case in chief admissible reputation or opinion

3  testimony concerning a pertinent trait.

4  **E.  The defense must file a supplemental notice of expert discovery, but the government's motion for a pretrial *Daubert* hearing is denied without prejudice as**

5  **premature.**

6      In late August, the defense filed a notice of its intention to call Michael J. Aloian, CPA,

7  as an expert witness.[109]  That notice explains vaguely that Aloian "is expected to testify using his

8  knowledge and experience about IRS 501(c) entities" in order to "help jurors understand the IRS

9  rules governing such entities and how they apply to the case at hand."[110]  The notice includes

10  Aloian's curriculum vitae, fee schedule, and list of prior testimony.[111]  The government contends

11  that this disclosure is insufficient under Federal Rule of Criminal Procedure (FRCP) 16.[112]  The

12  defense doesn't deny the inadequacy of this disclosure—it responds instead that Aloian's

13  testimony may be moot if the government introduces its own witness to explain the differences

14  between the entities identified in the indictment ("a charity . . . , a political action committee . . . ,

15  and a campaign account").[113]

16      A defendant cannot avoid complying with the Federal Rules of Criminal Procedure based

17  on the possibility that she might not call her expert witness at trial.  FRCP 16 requires that

18  expert-witness disclosures contain "a complete statement of all opinions that the defendant will

19  elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the

20

21  [109] ECF No. 28.

    [110] *Id.* at 1.

22  [111] *Id.* at 4–6.

23  [112] ECF No. 29 at 10.

    [113] ECF No. 45 at 13.

27

witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."[114]  Fiore's disclosure falls far short of satisfying those requirements, and the defense's assertion that she may not call Aloin at trial does not justify her failure to comply with this procedural rule.  So I order the defendant to supplement Aloian's expert-witness disclosure by 5 p.m. on Thursday, September 19, 2024.

The government also asks for a pretrial *Daubert* hearing to determine whether Aloian's expert testimony is sufficiently relevant and reliable.[115]  Fiore doesn't oppose that request "so long as whomever the [g]overnment intends on using to educate the jury as to the differences between a charity, a political action committee, and a campaign fund, is also properly vetted."[116]  At this stage, and particularly in light of Fiore's representation that Aloian might not be called at all (and certainly won't be called until the defense's case), I find that it would be a waste of judicial resources to conduct a *Daubert* hearing before trial commences, so I deny the request without prejudice to the government's ability to renew its motion for a *Daubert* hearing if and when the defense determines that it will be putting Aloian on the stand.

### Conclusion

IT IS THEREFORE ORDERED that the United States of America's omnibus motion in limine **[ECF No. 29] is GRANTED in part:**

---

[114] Fed. R. Crim. P. 16(b)(1)(C)(iii).

[115] ECF No. 29 at 12–13.

[116] ECF No. 45 at 14.  Fiore's tit-for-tat proposal is rejected.  The prosecution has not identified an expert to testify in this case, and Fiore has not provided any argument or authority suggesting that testimony about the differences between the accounts involved in this case must be presented only through a designated expert.

♦ **The government's motion to preclude Fiore's vindictive- or selective-prosecution "defense" is GRANTED** because that theory is not a legal defense to these charges.  So the defense is precluded from offering argument or evidence that the government has vindictively or selectively targeted or prosecuted Fiore for her political beliefs or affiliations, labeled her a domestic terrorist, or otherwise acted outrageously.

♦ **The government's request to preclude the defense from encouraging jury nullification is GRANTED** because trial courts have a duty to ensure that the jury's verdict is based on the law and the evidence.  So the defense may not introduce argument or evidence of the government's animus toward Fiore or mention the potential punishment for these offenses or the impact it would have on her.

♦ **The government's motion to preclude the defense from introducing evidence of specific good acts to prove Fiore's good character is GRANTED** because character is not an element of these wire-fraud and conspiracy offenses.  This ruling does not preclude reputation or opinion evidence that otherwise complies with the Federal Rules of Evidence.

♦ The court finds that proof that Fiore converted campaign and political-action-committee donations for her personal use, laundered that money through myriad entities, and falsified campaign-finance reports to conceal that wrongdoing would be admissible under exceptions to Federal Rule of Evidence 404(b).  **But the court holds in abeyance the ultimate ruling on the admissibility of this other-acts evidence** because the prosecution has not yet shown that the evidence is

sufficient to support a finding that Fiore committed those alleged acts. **The prosecution should be prepared to present an offer of proof at the pretrial hearing on Friday, September 20, 2024**.

◆ The government's motion for a supplemental disclosure for defense expert, Michael J. Aloian, CPA is **GRANTED** because the initial notice was woefully inadequate under the Federal Rule of Criminal Procedure 16(b)(1)(C)(iii). **The defendant must file an amended notice that complies with that rule by 5 p.m. on Thursday, September 19, 2024.**

◆ **The government's motion for a pretrial *Daubert* hearing on Aloian's expert qualifications is DENIED without prejudice** to its ability to raise the issue again during the trial if the defense ultimately decides to call Aloian to testify.

IT IS FURTHER ORDERED that **Fiore's motion in limine to exclude Nicole Beck's testimony [ECF No. 31] is DENIED** because her testimony is probative, and the defense has not established that it would be unfairly prejudicial.

IT IS FURTHER ORDERED that Fiore's motion in limine to exclude evidence of other bad acts on the basis that those acts aren't similar enough to the offenses charged **[ECF No. 30] is DENIED** because their common theme is sufficiently similar under the law.

_____
U.S. District Judge Jennifer A. Dorsey
September 18, 2024