COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice
DAHOUD ASKAR
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-368-1667
Email: Dahoud.Askar@usdoj.gov
ALEXANDER GOTTFRIED
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-615-1286
Email: Alexander.Gottfried@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHELE FIORE,<br><br>Defendant. | Case No. 2:24-cr-00155-JAD-DJA<br><br>**Government's Motion for Proffers for the Testimony of Defense Witnesses and to Exclude Defense Witnesses** |

The United States of America, by and through Corey Amundson, Chief, United States Department of Justice, Public Integrity Section, and Alexander Gottfried and Dahoud Askar, Trial Attorneys, hereby files this motion to exclude specified defense witnesses and for proffers for the testimony of other defense witnesses. For the reasons discussed below, the government asks that its motion be granted.

**Argument**

Prior to trial, defendant Michelle Fiore filed a witness list that included, among other names: Amanda Hampton, Timothy Johnson, Michael Aloian, George Kelesis, Matthew Sheldon, Nick Radogna, Liz Ragodna, Dan Burdish, and Federal Bureau of Investigation Special Agent Cody Fryxell. ECF No. 34. Fiore has also indicated through counsel that she wishes to call Special Agent Kyle Jaski to testify if the government does not call him in its case-in-chief. The government has not received any discovery from Fiore regarding any of these proposed witnesses. The government is concerned that Fiore is calling these witnesses to elicit irrelevant or improper evidence.

1.  **Amanda Hampton**

Amanda Hampton is an assistant to Fiore's counsel. In conversations with Fiore's counsel, the government was advised that Hampton would testify to the fact that many of the government's witnesses were unwilling to speak with Fiore or defense counsel after those witnesses spoke with the government.[1] During the course of trial, Fiore asked some of the government witnesses if they had met with the defense team prior to trial. However, any such testimony is irrelevant, as it has no bearing on any element of the charges in the superseding indictment and would only serve to confuse the issues. *See* Fed. R. Evid. 401, 403. Moreover, such testimony is designed only to elicit jury nullification, calling on the jurors to sympathize with Fiore's ability to prepare for trial. As the Court rightly recognized, "a trial court . . . has a duty to stop [jury nullification]" "by proactively precluding argument or evidence designed to elicit jury nullification." ECF No. 51 at 23; *see also Merced v. McGrath*, 426 F.3d 1076, 1079–80 (9th Cir. 2005) (holding that nullification is "a violation of a juror's

---

[1] The government notes that it has not instructed any of its witnesses not to meet or talk to defense counsel, and whenever a witness has stated that defense counsel has reached out, the government has made clear that they are free to speak with the defense.

2

sworn duty to follow the law as instructed by the court," and "trial courts have the duty to forestall or prevent" it). Accordingly, the Court should preclude Hampton's testimony, unless defense counsel can proffer a different relevant purpose.

**2.  Timothy Johnson**

Timothy Johnson is one of Fiore's ex-husbands. To the government's knowledge, Johnson and Fiore were married decades before the time period covered by the superseding indictment. The government does not expect Johnson to have any relevant personal knowledge of the charges in the indictment. The government therefore respectfully requests a proffer of Johnson's testimony to determine its relevancy.

**3.  Michael Aloian**

Initially, Fiore noticed Michael Aloian as an expert witness, claiming that Aloian would testify "using his knowledge and experience about IRS 501(c) entities." ECF No. 28. Because the expert notice was deficient, the Court granted the government's motion for a supplemented or corrected expert notice. ECF Nos. 29, 51. Fiore never filed an amended expert notice, and instead represented that Aloian would not testify as an expert but rather would testify as a lay witness based on his personal knowledge. However, it is unclear how Aloian would have personal knowledge of the case, given that his original proposed testimony was based on his knowledge and experience as a certified public accountant and did not reference any direct knowledge Aloian had. *See* ECF No. 28. The government is thus concerned that Fiore is attempting to solicit improper lay witness testimony under Federal Rule of Evidence 701. Lay witnesses, such as Aloian, may only give testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay opinions must

be based on a witness's "perception" rather than the witness's "knowledge, skill, experience, training, or education." *Compare* Fed. R. Evid. 701 *with* Fed. R. Evid. 702. To the government's knowledge, Aloian was not a witness to the scheme charged in the superseding indictment, so it is highly unlikely that he will be able to issue an opinion based on his perception. The government therefore respectfully requests a proffer of Aloian's testimony to determine whether it will comply with Federal Rule of Evidence 701.

**4.    George Kelesis, Esq.**

George Kelesis was previously retained to represent Fiore in the instant matter. *See* ECF No. 6. As far as the government is aware, Kelesis has no personal knowledge of the conduct charged in the superseding indictment. Rather, his knowledge of this case comes from serving as Fiore's counsel. The government therefore respectfully requests a proffer of Kelesis's testimony to determine its relevancy.

**5.    Matthew Sheldon**

The defense advised the government that Matthew Sheldon is a client of Fiore's consulting business, Politically Off the Wall. Politically Off the Wall is only tangentially related to the charges in this case based on its role as a pass-through entity for funds from Future for Nevadans and A Bright Present Foundation. The government will not present evidence questioning the legitimacy of Politically Off the Wall as a consulting business or suggest that it does not have clients. Because Sheldon's relationship with Fiore only seems to be through Politically Off the Wall, it is unclear if Sheldon has any personal knowledge of the conduct forming the basis of the charges in the superseding indictment. The government therefore respectfully requests a proffer of Sheldon's testimony to determine its relevancy.

### 6. Liz and Nick Radogna

Liz Radogna and Nick Radogna own a restaurant, Lino's Pizzeria & Italian Cuisine. In her contribution and expense reports for her campaign and PAC, Fiore reports spending funds at the Radognas' restaurant, which is confirmed by financial records. Conceivably, the Radognas will testify that the funds they received went towards catering community or campaign events. However, whether Fiore ordered food from the Ragodnas' restaurant for community events or for her campaign does not make it more or less likely that Fiore used or intended to use 100% of the donations she collected for the building of the Alyn Beck statue. While Fiore's use of these funds to cater community or campaign events may potentially demonstrate that not *all* the funds in her campaign or PAC were diverted for personal use, that is not what Fiore is charged with in the superseding indictment. Accordingly, such testimony would be irrelevant and would only serve to confuse the issues for the jury. *See* Fed. R. Evid. 401, 403. The government therefore respectfully requests a proffer of Ragodnas' testimony to determine its relevancy.

### 7. Dan Burdish

Dan Burdish was previously employed as Fiore's assistant between approximately 2015 and 2022. In an interview with the government, Burdish claimed to be peripherally aware of A Bright Present Foundation. Burdish explained that he purchased the URL address for the charity and was later reimbursed by Fiore. He also recalled that a park with statues had been constructed in honor of fallen officers Alyn Beck and Igor Soldo and that the project was expensive. Based on the information collected in Burdish's interview, it does not appear that Burdish has significant or relevant personal knowledge of the conduct forming the basis of the charges in the superseding indictment. The government therefore respectfully requests a proffer of Burdish's testimony to determine its relevancy.

### 8. Special Agents Cody Fryxell and Kyle Jaski

The government moves to exclude Special Agents Fryxell and Kyle Jaski, as it appears that Fiore is calling them for the primary purpose of impeachment. Federal Rule of Evidence 607 allows any party, including the party that called the witness, to attack a witness's credibility. But impeachment is not permitted where it is employed as a guise for submitting to the jury substantive evidence that is otherwise inadmissible. *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990). Impeachment testimony can never be more than the cancellation of the adverse answer by which the party is surprised. *Id.* (citing *United States v. Crouch*, 731 F.2d 621, 623 (9th Cir.1984)). Accordingly, a witness cannot be called for the primary purpose of impeaching that witness's credibility. *Id.* at 555–56.

In *Gomez-Gallardo*, the government called a co-defendant, who had previously pled guilty to a conspiracy to distribute cocaine with the defendant, to testify in its case-in-chief. *Id.* at 554. At trial, the co-defendant asserted that the defendant was innocent, consistent with his previous testimony given outside of the presence of the jury. *Id.* The government then proceeded to impeach his credibility. *Id.* The Ninth Circuit held that the government committed plain error by calling the co-defendant for the primary purpose of impeaching his credibility. *Id.* at 555–56.

In contrast, in *Gilbert*, the government's impeachment of two of its own witnesses was appropriate in its case against a defendant for being a felon in possession of a firearm. *United States v. Gilbert*, 57 F.3d 709 (9th Cir. 1995). In *Gilbert*, the government called two witnesses who previously made statements that they observed the defendant in possession of a firearm. *Id.* at 710-711. Specifically, one of the witnesses called 911 and reported that the defendant was holding a firearm to the other witness's head. *Id.* at 710. At the trial, however, both witnesses testified that they did not observe defendant in possession of a firearm. *Id.* at 711.

6

The government impeached both witnesses with inconsistent prior statements. *Id.* In reasoning that the district court did not abuse its discretion in allowing the government to impeach its own witnesses, the Ninth Circuit noted that both were eyewitnesses to the conduct for which defendant was convicted; that testimony of the two witnesses was essential to the government's case-in-chief; that if the government had not called the two witnesses, the jury would have been left to ponder why the government was reluctant to call them; and that the government specifically argued to the jury that the impeachment testimony was only admitted for the purpose of determining whether the witnesses were truthful when giving their testimony. *Id.* at 711–12.

Here, it appears that Fiore is only calling Special Agents Fryxell and Jaski to impeach their credibility with otherwise irrelevant and inadmissible evidence. Unlike in *Gilbert*, Special Agents Fryxell and Jaski are not eyewitnesses to the conduct forming the basis of the charges in the superseding indictment, their testimony is not essential to either the government's case-in-chief or the defense's case-in-chief,[2] and the jury will not be left to ponder why Special Agents Fryxell and Jaski were not called to testify. During opening statements, Fiore's counsel made clear that the defense's theory of the case is that the FBI's investigation was sloppy and that the FBI should be held to a higher "standard of performance." Fiore may seek to further these arguments while questioning Special Agents

---

[2] To the extent that Fiore claims that she wishes to call Special Agent Fryxell to testify about the execution of the search warrant on her residence, the government already called Special Agent Douglas Smith, and Special Agent Smith was extensively cross-examined by the defense. *See* ECF No. 54. Special Agent Jaski was not present for the execution of the search warrant, so he cannot provide personal knowledge of its execution. The government notes that Special Agent Jaski did testify before the grand jury on multiple occasions in furtherance of the superseding indictment.

7

Fryxell and Jaski, rather than introduce any actual factual evidence through them.[3] Thus, it appears that Fiore is only calling them for the purpose of impeaching them.

In addition, the government is concerned that Fiore will focus her questioning of Special Agents Fryxell and Jaski on issues that are irrelevant to whether Fiore is guilty of the charged offenses. For instance, the government anticipates that Special Agents Fryxell and Jaski will be questioned on the change in focus of the investigation from campaign finance violations to fraud involving the Alyn Beck statue. The government believes that this line of questioning would be related to Fiore's selective prosecution argument, that the FBI targeted Fiore for investigation and prosecution. This argument is strictly precluded by the Court's order on the parties' motions in limine. *See* ECF No. 51. As noted in the government's previous filings, evidence or argument related to selective prosecution are irrelevant and will only confuse the issues. ECF Nos. 29, 50; *see* Fed. R. Evid. 401, 403.

Accordingly, Fiore should be precluded from calling Special Agents Fryxell and Jaski to testify.

## Conclusion

For the foregoing reasons, the government respectfully requests the Court exclude Special Agents Fryxell, Special Agent Jaski, and Amanda Hampton and order the defense to provide a proffer for the remaining witnesses.

---

[3] The government anticipates that any direct examination of Fryxell would mirror the cross-examination of Fryxell in *United States v. Chad Hall*, Case No. 2:19-cr-154-RFB-VCF, ECF No. 285, conducted by Fiore's counsel.

DATED this 28th day of September.

                              Respectfully submitted,

                              COREY R. AMUNDSON
                              Chief, Public Integrity Section
                              U.S. Department of Justice

                              _/s/   Dahoud Askar
                              Dahoud Askar and Alexander Gottfried
                              Trial Attorneys