CLARK HILL PLLC
PAOLA M. ARMENI
Nevada Bar No. 8357
Email:  parmeni@clarkhill.com
GIA N. MARINA
Nevada Bar No. 15276
Email: gmarina@clarkhill.com
1700 South Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Tel:  (702) 862-8300

*Attorneys for Defendant, Michele Fiore*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHELE FIORE,<br><br>Defendant. | CASE NO. 2:24-cr-00155-JAD-DJA<br><br>**DEFENDANT MICHELE FIORE'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. RULE 29** |

**CERTIFICATION:  This document is timely filed.**

　　Ms. Fiore's Motion for Acquittal should be granted. Fiore incorporates and renews her earlier motion for judgment of acquittal under Rule 29(a).[1] Ms. Fiore seeks acquittal pursuant to U.S. Const. amend. V; Fed. R. Crim. P. 29(c) because the government failed to meet its burden on all counts. Namely, the government did not prove beyond a reasonable doubt the elements of wire fraud. They failed to prove that Ms. Fiore cheated several of the named victims as initial requests for donations were not false based on government witness, Chris Armstrong's testimony. Additionally, as to certain wire fraud counts, the government did not prove Ms. Fiore solicited the donations for the Beck statute. Lastly, the use of wire to further the scheme to defraud was not met, as the clearing of the checks did not advance the purported scheme.

　　Likewise, the Government failed to prove beyond a reasonable doubt that there was a conspiracy, that is an agreement between Ms. Siegel and Ms. Fiore to commit a crime.

---

[1] ECF 92: 74-85.

CLARKHILL\M9636\503106\280663954.v3-1/31/25

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF RELEVANT FACTS

On July 16, 2024, the grand jury returned a true bill and an Indictment was filed charging Ms. Fiore with one count of Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349) and four counts of Wire Fraud (18 U.S.C. § 1343).[2] Ms. Fiore was arraigned and pled not guilty to all counts on July 19, 2024.[3] Ms. Fiore was free at liberty on a personal recognizance bond.[4]

On August 20, 2024, the grand jury returned a Superseding Indictment charging Ms. Fiore with one count of Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349) and six counts of Wire Fraud (18 U.S.C. § 1343).[5] On September 9, 2024, Ms. Fiore pled not guilty to all counts contained in the Superseding Indictment.[6]

Trial commenced on September 24, 2024[7] and jury selection consumed the first day. The second day of trial resumed on September 25, 2024.[8] The parties made opening statements and the following witnesses testified for the Government: (1) Nicole Beck; (2) Brian Hanlon; (3) Michael Barnes; (4) Douglas Smith; (5) Elizabeth Stavola; and (6) David Chesnoff.

On September 26, 2024, the third day of trial resumed.[9] The following witnesses testified for the Government: (1) Jay Brown; (2) Robert Groesbeck; (3) Robert Richardson; (4) Shauna Bakkedahl; (5) Tami Montes; (6) Mark Wlaschin; (7) Thomas White; (8) Peter Lee; (9) Cicely Hoffman; and (10) George Kaime.

On September 27, 2024, day four of trial resumed[10] and the following witnesses testified for the Government: (1) Harry Mohney; (2) Brett Torino; (3) Alyssa Struck; (4) Ronnie Council; and (5) Tara Krumme.

---

[2] *See* ECF No. 1.
[3] *See* ECF No. 9.
[4] *See* ECF No. 11.
[5] *See* ECF No. 19.
[6] *See* ECF No. 41.
[7] *See* ECF No. 82.
[8] *See* ECF No. 87.
[9] *See* ECF No. 60.
[10] *See* ECF No. 88.

CLARKHILL\M9636\503106\280663954.v3-1/31/25

Day five of trial took place on September 30, 2024,[11] and the following witnesses testified for the Government: (1) Joseph Lombardo; (2) Peter Palivos; (3) Chris Armstrong; and (4) Sandra Harris. The Government rested, and the defense called (1) Kyle Jaski; and (2) Sheena Siegel. Ms. Siegel, the daughter of Ms. Fiore, was an integral defense witness who, unbeknownst to the Court at the time of her taking the stand, had a Testimonial Use Immunity Agreement in place with the United States Attorney's Office, specifically AUSA Steven Myhre, since at least February 1, 2023, as an unindicted co-conspirator.[12]

On October 1, 2024, day six of trial commenced.[13] The defense called the following witnesses: (1) Caryn Minowsky; (2) Timothy Johnson; (3) Sheena Siegel; (4) Jorge Lopez; and (5) Cody Fryxell.

On October 2, 2024, day seven of trial commenced[14] and the defense called Sheena Siegel outside of the presence of the jury.[15] Ultimately, over the defense's objection, Ms. Siegel's testimony and all exhibits introduced through her testimony was stricken from the record.[16]

On October 3, 2024, the parties presented their closing arguments and submitted the case to the jury.[17] The jury returned a verdict, unanimously finding Ms. Fiore guilty of all seven counts.[18]

## II.

## LEGAL ARGUMENT

A. **Rule 29 Legal Standard**

The Federal Rules of Criminal Procedure allow defendants to make a motion for judgment of acquittal after the government closes its evidence or after the close of all evidence. In deciding a defendant's Rule 29 motion, the district court "must enter a judgment of acquittal of any offense

---

[11] *See* ECF No. 90.
[12] *See* Exhibit A of the Motion for New Trial.
[13] *See* ECF No. 91.
[14] *See* ECF No. 92.
[15] *Id.* at 34-52.
[16] *Id.* at ECF No. 92, at 12-17.
[17] *See* ECF No. 93.
[18] *Id.* at 148-149.

CLARKHILL\M9636\503106\280663954.v3-1/31/25

for which the evidence is insufficient to sustain a conviction." [19] To decide whether the evidence was insufficient, the court must consider the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[20]

While "circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction,"[21] "a jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility." [22] In determining whether the government has produced sufficient evidence to permit a reasonable jury to return a verdict in the government's favor, the Court must consider the applicable burden of proof.[23] Due process protects everyone from criminal conviction unless the government proves guilt on each element beyond a reasonable doubt.[24] To support a conviction under a beyond a reasonable doubt standard, the evidence and inferences drawn from the evidence must be sufficiently compelling that a hypothetical reasonable fact-finder could have reached "a subjective state of near certitude of the guilt of the accused."[25]

B. **As a Matter of Law, Insufficient Evidence Was Presented to the Jury to Prove Ms. Fiore is Guilty of The Charge of Wire Fraud**

The first step in evaluating a Rule 29 motion is to examine the elements of the charged conduct—here: Wire Fraud. The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud.[26] Section 1343, however, "does not purport to reach all frauds, but only those limited instances" wherein use of a wire "is a part of the execution of the fraud, leaving all other cases to

---

[19] Fed. R. Crim. P. 29(a).

[20] *United States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (explaining that "the critical inquiry" is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt")).

[21] *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

[22] *United States v. Bennett*, 621 F.3d 1131, 1149 (9th Cir. 2010).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-53 (1986).

[24] *In re Winship*, 397 U.S. 358, 363–64 (1970).

[25] *Jackson*, 443 U.S. at 315.

[26] 18 U.S.C. § 1343.

be dealt with by appropriate state law."[27] A wire communication is "in furtherance" of a fraudulent scheme if it is incident to the execution of the scheme, meaning that it need not be an essential element of the scheme, just a step in the plot.[28] However, a wire communication cannot be part of an after-the-fact transaction that, although foreseeable, was not in furtherance of the defendant's fraudulent scheme.

Ms. Fiore was charged in Counts 2 through 7 with wire fraud.[29]

| Counts  | Donor     | Organization | Memo line   | Date     |
|---------|-----------|--------------|-------------|----------|
| Count 2 | Lombardo  | FFN[30]      | Statute     | 7/16/19  |
| Count 3 | Stavola   | BP[31]       | None        | 10/28/19 |
| Count 4 | Brown     | BP           | None        | 12/3/19  |
| Count 5 | Palivos   | BP           | None        | 1/21/20  |
| Count 6 | LECET     | FFN          | Sponsorship | 2/7/20   |
| Count 7 | Local 872 | FFN          | Statute     | 2/7/20   |

Each donor wrote a check to either Bright Present or Future for Nevadans. Those checks were deposited in their respective Bank **of Nevada** accounts.[32] In opening several Bank of Nevada accounts, Ms. Fiore checked "no" to domestic wire transfers.[33]

Michael Barnes testified to the internal process of Bank of Nevada when they receive checks.[34] That process includes a check getting sent to a clearing house outside of Nevada to settle checks.[35] The Government argued that the clearing of the check satisfies the use of wire element.[36]

1. **The Use of Wire was Not Utilized to Further the Scheme So a Judgment of Acquittal Must be Entered on All Wire Fraud Counts**

The element of wire fraud that that use of a wire to further scheme could not be found

---

[27] *Kann v. United States,* 323 U.S. 88 (1944).

[28] *United States v. Jinian,* 725 F.3d 954, 960 (9th Cir. 2013).

[29] ECF 19.

[30] Future for Nevadans (PAC).

[31] The Bright Present Foundation (charity).

[32] ECF 90:79-121.

[33] Exhibit A -page 31 of Government Exhibit 3, Exhibit B- page 40 of Government Exhibit 2 and Exhibit C- page 3 of Government Exhibit 4.

[34] ECF 87:66-144.

[35] *Id*. at 122-127.

[36] ECF 93: 42.

CLARKHILL\M9636\503106\280663954.v3-1/31/25

beyond a reasonable doubt. At trial, the Government argued that the clearing of the check satisfies the use of wire element. [37] Yet, this argument cannot be support by the law.

In *Kann v. United States*,[38] Kann, together with six other employees, devised a scheme to defraud their employer by diverting part of the company's profits to a shell company through which the defendants distributed the diverted profits in the form of salaries, dividends, and bonuses.[39] Kann challenged his mail fraud conviction by arguing that the mailing of the checks by the banks "could not be for the purpose of executing the scheme since the defendants to whom those checks were delivered had received the money represented by the checks and each transaction, after such receipt, was irrevocable as respects the drawer." [40] The *Kann* court concluded that, based upon the facts before it, the "subsequent banking transactions between the banks concerned were merely incidental and collateral to the scheme and not a part of it.[41] The court further noted that the scheme was "completely executed" once the defendants "received the money intended to be obtained by their fraud."[42] Determining that the funds were irrevocably in the defendants' possession when the checks were deposited or cashed, [43] the *Kann* Court concluded that the subsequent interbank mailings were separate and distinct from the defendants' fraudulent scheme.

As part of its analysis, the *Kann* court stated that a "mailing has ordinarily had a much closer relation to further fraudulent conduct than has the mere clearing of a check...."[44]  It also described as "conceivable" that the mere clearing of a check, "alone, *in some settings*, would be enough" to support a fraud conviction.[45]

---

[37] ECF 93:42.
[38] 323 U.S. 88 (1944).
[39] *Id*. at 89-90.
[40] *Id.* at 93.
[41] *Id.* at 95.
[42] *Id.*
[43] *Id.* at 94.
[44] *Id.* at 95.
[45] *Id.* at 95 (emphasis added).

CLARKHILL\M9636\503106\280663954.v3-1/31/25

*United States v. Jinian,*[46] is one such case where the court found that the mere clearing of a check would be enough. However, Jinian is distinguishable from Ms. Fiore's case. In *Jinian*, the defendant informed his employer's finance manager, that the company's chairman authorized him to receive compensation more than his annual salary and to draw advances on that compensation.[47] The defendant had never received authorization.[48] The finance manager began issuing checks and Jinian deposited these checks into his account.[49] In total, Jinian improperly obtain over 1.5 million from the company.[50] The court in upholding Jinian's conviction stated that his ability to perpetuate his scheme without interruption for two years was dependent upon the successful completion of the check clearing process for each company check Jinian deposited into his bank account.[51] Jinian depended upon each check successfully clearing through the federal reserve because, if either bank had been left holding the dishonored check, Jinian's scheme would have been discovered.[52]

Here, the use of the wire to further the scheme cannot be shown. First, Ms. Fiore had no personal knowledge that a wire would be utilized in her banking. She utilized a bank that by its very name suggests the banking remains in Nevada. Further, the Government's own exhibits show that Ms. Fiore never had any intention of herself or her accounts ultizing a wire checking "no" to domestic wire transfers.

More importantly, the facts here don't support that the wires (clearing of the checks) was in furtherance of the alleged scheme. In *Jinian,* the dollar amount of the check was the fraud. The dollar amount had not been authorized. The clearing was necessary to allow future checks to be issued by the same payor and deposited. If the clearing of the check was halted, the scheme would have been uncovered. The checks issued to Ms. Fiore's companies were from different individuals

---

[46] 725 F.3d 954, 959 (9th Cir. 2013).
[47] *Id.* at 959.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.* at 962.
[52] *Id.* at 963

CLARKHILL\M9636\503106\280663954.v3-1/31/25

not one person or entity. Thus, the checks were separate transactions that were not dependent on each other or the same payor of the check. The checks were legitimate checks that would have never been able to be dishonored because the amount of the check had been authorized. Like *Kann,* the checks were irrevocably in Ms. Fiore's possession when the checks were deposited or cashed. The subsequent clearing of the checks was separate and distinct from Ms. Fiore's alleged fraudulent scheme.

For these reasons, the element of use of a wire in furtherance of the scheme could not have been found beyond a reasonable doubt. Judgment for Acquittal should be entered on all the wire fraud counts.

**2. A Judgment of Acquittal Should Be Entered for Counts 2 -6 Because the Government Did Not Prove a Scheme to Defraud or a Specific Intent to Defraud When those Checks Were Written**

The element of the defendant acted with the intent to defraud, that is, the intent to deceive and cheat was not met as it relates to Counts 2-6. To be guilty of wire fraud, a defendant must intend to deceive *and* cheat.[53] That is a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions.[54] A defendant acts with the intent to *deceive* when he "make[s] false statements or utilize[s] other forms of deception[.]"[55] A defendant acts with the intent to *cheat* when he engages in "a scheme or artifice to defraud or obtain money or property" and "deprive[s] a victim of money or property" thereby "cheat[ing] someone out of something valuable." [56]

Chris Armstrong testified that the original discussion regarding payment for the statute was that Olympia Companies would pay half of the statute and the City of Las Vegas/Fiore would be responsible for the other half. [57] Mr. Armstong then stated sometime before February 2020 they

---

[53] *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).
[54] *Id.* at 1101-1103.
[55] *Id.* at 1101.
[56] *Id.*
[57] ECF 90:56.

CLARKHILL\M9636\503106\280663954.v3-1/31/25

advised the City of Las Vegas/Fiore that Olympia would pay for the entire statue.[58] The Government's own witness admitted that the initial plan was for the cost of the statue to be divided. It was only at some later time, Olympia allegedly verbally, not in writing, advised that they were footing the entire bill. Counts 2-5 were checks cut prior to February 2020. Thus, when those particular checks were cut purportedly at the request of Ms. Fiore, there was still a perception that the statue needed to be funded by the City. Therefore, it was impossible for Ms. Fiore to deceive the donors because any requests for donations for the statue and the opening of Beck Park would not have been a false statement at the time the donations were requested. Without an act to deceive, there cannot be wire fraud.

### 3. Counts 2, 5, 6 Could Not Be Proven Beyond a Reasonable Doubt

As argued in the Motion for New Trial, there is evidence that Jay Brown not Ms. Fiore requested a donation from Joseph Lombardo. Likewise, there was no testimony from Mr. Brown that he solicited donations on the behest of Ms. Fiore. If Ms. Fiore did not solicit or caused to be solicited the donation from Mr. Lombardo, then there is no evidence of an intent to deceive or cheat. Therefore, the conviction for Count 2 cannot stand.

Count 5 cannot stand as Mr. Palivos donated the money with the intention that it be used for veterans, homeless or law enforcement.[59] Although the government argued that the money was not used for the Beck statue, the government did not prove that the donation did not go to benefit one of Ms. Fiore's numerous community events that benefit the homeless and veterans.

Lastly, count 6 is supported with a check from LECET. However, the memo line for this check states "sponsorship."[60] Count 6 and 7 checks are signed by the same person, Tommy White.[61] Yet, the check associated with Count 7, includes in the memo line – Alyn Beck statue. If the donation in Count 6 was also for the statue, it begs the question why Mr. White chose to write "sponsorship" and not "statute" in the memo line. The evidence does not prove beyond a

---

[58] ECF 90:57, 72.
[59] ECF 90:46.
[60] Government Exhibit 63, page 45.
[61] *Id.*

reasonable doubt that the check associated with Count 6 was for the statute and there Ms. Fiore could not have cheated LECET out of their money.

### C. As a Matter of Law, Insufficient Evidence Was Presented to the Jury to Prove Ms. Fiore is Guilty of The Charge of Conspiracy

For the government to sustain a conviction for conspiracy, it must prove:

1. First, beginning at least as early as July 2019, and ending on or about February 2020, there was an agreement between two or more persons to commit wire fraud, as charged in the Indictment; and

2. Second, Ms. Fiore became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.[62]

A stated in Ninth Circuit Model Jury Instruction, 11.1:

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

First, as there was insufficient proof of wire fraud, the underlying charge, the verdict on the conspiracy charge cannot be sustained.[63] However, even if this Court believes that sufficient proof existed to return a guilty verdict on the underlying wire fraud charges, the conspiracy still cannot stand.

---

[62] *See* Ninth Circuit Model Jury Instruction 11.1, Conspiracy – Elements.

[63] *See United States v. Manarite, 44 F.3d 1407, 1413 (9th Cir. 1995),* as amended on denial of reh'g (Mar. 15, 1995)(If the judge instructs the jury that it need find only one of the multiple objects, and the reviewing court holds any of the supporting counts legally insufficient, the conspiracy count also fails).

CLARKHILL\M9636\503106\280663954.v3-1/31/25

There was insufficient evidence presented to the jury to prove that Ms. Fiore entered into an agreement to commit criminal wire fraud. Indeed, not a single donor testified as to *anything* about Ms. Siegel. In that same vein, donors that testified stated that the funds solicited for creation of the Beck statue came from Jay Brown or another source – *not* Ms. Fiore.[64] Indeed, some had no knowledge of Ms. Fiore or her various entities.[65] Not only did the Government fail to prove a conspiracy, it failed to prove that Ms. Fiore was aware of the checks received from donors and their intended purpose[66] or Ms. Fiore's intent to accomplish the scheme. The Government's evidence relies on speculation and conjecture, not concrete proof of Ms. Fiore's involvement in the conspiracy.

The Government did not prove that there was *any* agreement between Ms. Fiore and at least one other person to commit wire fraud. While the agreement need not be explicit,[67] it is not enough that they "simply met, discussed matters of common interest, acted in similar ways, **or perhaps helped one another**."[68] Further, the Government must show that the conspirators had a mutual understanding to accomplish the unlawful design.[69] Although it did not call Ms. Sheena Siegel as a witness, the Government argued (for the first time) in closing statements that Ms. Siegel "was an instrumental part of [] her mother's scheme. She was a co-conspirator."[70] This was convenient, as the jury had already heard Ms. Siegel assert her Fifth Amendment privilege after the Government improperly and without authority withdrew her Immunity Agreement.[71] However, simply calling Ms. Siegel a co-conspirator was not sufficient and Ms. Fiore cannot be convicted

---

[64] *See* ECF No. 60, at 43:9-25; 44:1-25; 45:1-4; *see also* Trial Exhibit 50; ECF No.88, at 15:4-15; ECF No. 60, at 58:13-17.

[65] *Id.*

[66] Most of the checks did not even have anything written in the Memo Line section.

[67] *United States v. Green*, 592 F.3d 1057, 1067 (9th Cir. 2010).

[68] *See* Ninth Circuit Model Jury Instruction 11.1 (emphasis added).

[69] *United States v. Hubbard*, 96 F.3d 1223 (9th Cir. 1996).

[70] *See* ECF No. 93, at 65:16-18.

[71] After the Government withdrew the immunity agreement, the Government asked Ms. Siegel if she conspired with her mom to defraud donors who gave money for the Beck statute which on advice of counsel asserted her privilege. ECF No. 91: 120:20-22.

of a conspiracy based solely on association with her own daughter. The jury's conclusion was erroneous and based on the stricken testimony of Ms. Siegel, which is improper.

## III.

## CONCLUSION

For the following reasons, Ms. Fiore's Motion for Judgment of Acquittal should be granted.

Dated this 31st day of January, 2025.

CLARK HILL PLLC

 /s/ Paola M. Armeni, Esq.
PAOLA M. ARMENI
Nevada Bar No. 8357
GIA N. MARINA
Nevada Bar No. 15276
1700 South Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Tel: (702) 862-8300

*Attorneys for Defendant, Michele Fiore*

CLARKHILL\M9636\503106\280663954.v3-1/31/25

**CERTIFICATE OF SERVICE**

The undersigned, an employee of Clark Hill PLLC, hereby certifies that on the 31st day of January, 2025, I served a copy of the **DEFENDANT MICHELE FIORE'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. RULE 29** (via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

Alexander Byrne Gottfried     alexander.gottfried@usdoj.gov

Dahoud Askar     Dahoud.Askar@usdoj.gov, heather.depremio2@usdoj.gov

    /s/ Tanya Bain
An employee of CLARK HILL PLLC