CLARK HILL PLLC
PAOLA M. ARMENI
Nevada Bar No. 8357
Email: parmeni@clarkhill.com
GIA N. MARINA
Nevada Bar No. 15276
Email: gmarina@clarkhill.com
1700 South Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Tel: (702) 862-8300

*Attorneys for Defendant, Michele Fiore*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHELE FIORE,<br><br>Defendant. | CASE NO. 2:24-cr-00155-JAD-DJA<br><br>**DEFENDANT MICHELE FIORE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. RULE 29** |

**CERTIFICATION:** This document is timely filed.

Defendant Michele Fiore submits her reply to the United States' Response [ECF 103] to Michele Fiore's Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. Rule 29 [ECF 96]. For the reasons cited in the Motion for Judgment of Acquittal as well as this Reply, Ms. Fiore's Motion for Acquittal should be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**LEGAL ARGUMENT**

**A. As a Matter of Law, Insufficient Evidence Was Presented to the Jury to Prove Ms. Fiore is Guilty of The Charge of Wire Fraud**

Ms. Fiore's argument related to the wire fraud counts was three-fold. First, the use of the wire was not in furtherance of the scheme. Second, counts 2, 5, 6 could not be proven beyond a reasonable doubt. Lastly, there was no intent to deceive as it relates to counts 2-5.

CLARKHILL\M9636\503106\280866398.v3-2/21/25

### 1.     The Use of the Wire was not in Furtherance of the Scheme to Defraud

As the government noted, while the mere clearing of a check may form the basis to support a fraud conviction, the Ninth Circuit recognized that the clearing of a check in other settings may not be enough for a conviction.[1] Here, is one of those settings.

Ms. Fiore's reliance on *Kann v. United States*,[2] is not misguided. The court held that the funds were irrevocably in the defendants' possession when the checks were deposited or cashed.[3] Therefore, the subsequent interbank mailings or here the wires were separate and distinct from the Ms. Fiore's fraudulent scheme and could not be for the purpose of executing the scheme.

While the government spends some time on the *Kann* case, the government ignores Ms. Fiore's argument as to how *United States v. Jinian*,[4] is distinguishable. In *Jinian*, the actual check was the fraud, the dollar amount of the check was never approved so the clearing of the check was necessary to allow future checks to be issued by the same payor and deposited. If the clearing of the check was halted, the scheme would have been uncovered. Here, the clearing of the check would not have furthered the scheme, as the clearing of the checks would not have identified any fraud.

The government then relies on *United States v. Williams*[5] and *United States v. Lo*,[6] in arguing that the clearing of checks is an act in furtherance of wire fraud. In *Williams*, he argued that the government did not present sufficient evidence of the interstate nature of the wire transfers.[7] Ms. Fiore is not disputing the interstate nature of the clearing of checks but rather how the clearing of the checks was not in furtherance of any scheme. To the extent the government is comparing *Williams* to the instant case, *Williams* is distinguishable. Williams wrote checks to Clymer to pay him for his role in the fraud, which was part of the execution of the scheme as conceived by Williams.[8] Here, the checks were legitimate checks for the specific amount the

---

[1] *Kann v. United States,* 323 U.S. 88, 95(1944).
[2] 323 U.S. 88 (1944).
[3] *Id.* at 94.
[4] 725 F.3d 954, 959 (9th Cir. 2013).
[5] 673 F. App'x 620, 623 (9th Cir. 2016) (internal citations omitted).
[6] 231 F.3d 471, 478 (9th Cir. 2000).
[7] 673 F. App'x at 623.
[8] *See* ECF No. 103, at 13:4-7.

donors intended, once the checks were deposited or cashed, the scheme was complete.

*Lo* is also discernable. In *Lo*, the mailings alleged were mailings by the County Recorder's office of grant deeds and deeds of trust for two properties.[9] These mailings occurred after the loans had been funded and after the deeds had been recorded in the Recorder's office.[10] In finding that the mailings were in furtherance of the scheme, the court stated that the mailings assured the "victims" the conveyance of the property had gone forward in accordance with the usual procedures of the Recorder's office and provided them with documentary proof when the sales were a sham.[11]  So, it is crystal clear that the mailings were necessary to the execution of the scheme.  That clarity is not apparent here. There was nothing about the clearing of the checks that furthered the scheme as outlined by the government.

### 2. Counts 2, 5, 6 Could Not be Proven Beyond a Reasonable Doubt.

As to Count 2, Ms. Fiore does not dispute what Mr. Lombardo said at trial but as argued in her Motion for New Trial, Mr. Lombardo had previously told prosecutors that he only made the donation for the statue after Jay Brown requested it not Michele Fiore.[12]

Peter Palivos testified at trial that, "We're very active in supporting military, veterans, police, fire, teachers and a number of other causes." [13] Like Mr. Lombardo, Mr. Palivos previously told the government that when he donated to Fiore's charity that the money would be used for the poor, police, and veterans, so that was his expectation.[14]  Mr. Palivos never stated that he donated money for the statue.[15]  However, at trial he stated he didn't recall that specific conversation but it was about donating money to this police matter…. something with the police."[16]

The government argues that Mr. White "clearly stated"…. that "sponsorship" was

---

[9] 231 F.3d at 478.
[10] *Id.*
[11] *Id.* at 479.
[12] See Exhibit E to Motion for New Trial.
[13] ECF No. 90, at 42:8-9.
[14] Exhibit HH to the Reply for the Motion for New Trial - Peter Palivos 302 dated February 19, 2021. There is also an audio recording of Mr. Palivos' interview, Exhibit GG to the Reply for the Motion for New Trial.
[15] *Id.*
[16] ECF No. 90, at 46-47.

synonymous with "contribution."[17] But Mr. White never stated that. Rather, in answering a question related to the process he follows for a check to be cut from LECET, he stated, "I would call up the co-chairman of the fund and say we just received this request for a sponsorship **or** a contribution, and he would give the approval or not approval."[18] Mr. White was the driving force behind both union checks (Counts 6 & 7) and signed both checks. There is a clear distinction between the purpose of both checks with one specifically identifying the statute in the memo line and the LECET check not referencing the statute.

### 3. There was No Intent to Deceive as It Relates to Counts 2-5[19]

The government states that Ms. Fiore is not the City of Las Vegas, nor would there be a requirement for Ms. Fiore to engage in private fundraising.[20] First, Mr. Armstrong used the City of Las Vegas and Ms. Fiore interchangeably. "But we approached the City and – and suggested that Olympia would pay for half of the statute and that the – City *or Councilwoman Fiore* would be responsible for the other half."[21] Further, what is to say that Ms. Fiore could not have raised the money and then provided it to the City of Las Vegas. The government is making conclusory remarks without any evidence that her personally raising funds is somehow not possible.

Further, the government argues at no point did Ms. Fiore tell Chris Armstrong, Brian Hanlon or Nicole Beck that she was privately fundraising.[22] Yet, the government does argue that Ms. Fiore did tell at least the donors in Counts 2-7, which included the highest law enforcement officer for the Las Vegas Metropolitan Police Department who was present at the unveiling wherein the government argues that it was made known Olympia paid for the statute and the 6 other people who testified at trial. The government cannot have it both ways – argue that Ms. Fiore was somehow trying to hide the request for donations while at the same time arguing she personally requested or directed donations from numerous people.

---

[17] ECF No. 103, at 9:14-16.
[18] Dkt 60, 200:7-11.
[19] Ms. Fiore's Motion for Judgment of Acquittal referenced Counts 2-6 in the title. This was error and should have referenced Counts 2-5, which is clear from the argument.
[20] ECF No. 103, at 10:15.
[21] ECF No. 90, at 56:12-15.
[22] ECF No. 103, at 11:1-2.

Ms. Fiore's bank accounts is the strongest evidence of her intent to defraud claims the government.[23] However, arguably this only supports the "cheat" and not the "deceive" in the required element of deceive and cheat. A defendant acts with the intent to *cheat* when he engages in "a scheme or artifice to defraud or obtain money or property" and "deprive[s] a victim of money or property" thereby "cheat[ing] someone out of something valuable." [24]

Because of Ms. Fiore's role with the City Council, the government suggests that she was in a good position to know that a contract was executed as early as August 2019 between Olympia and Brian Hanlon.[25] Neither Ms. Fiore or the City was a party to that contract and there was no evidence at trial that Ms. Fiore knew about the terms of the contract, specifically the payment. Further, the government's own witness testified that any oral conversation about the payment of the statue in full by Olympia was not at the time the contract was executed. Rather it was sometime before February 2020, [26] sometime around the park opening. [27] At the time the donations from counts 2-5 were purportedly requested by Ms. Fiore, there was still a belief that half the statute needed to be funded by the City of Las Vegas. Therefore, any request would not have been a false statement. With no false statement, there cannot be an intent to **deceive and** cheat. [28]

**B. There Was Insufficient Evidence Presented to the Jury to Convict Ms. Fiore of Conspiracy to Commit Wire Fraud**

Even viewing the light most favorable to the Government, a reasonably jury could not have found that the Government proved beyond a reasonable doubt that there was an agreement between Ms. Fiore and at least one other person, Sheena Siegel, to commit wire fraud. Further, as asserted in Ms. Fiore's motion for new trial,[29] the jury instruction on this count was deficient and necessarily omitted elements of the offense, thus leaving the jury no choice but to convict on this count. Notwithstanding the erroneous instruction, yet amplifying the due process violations that

---

[23] ECF No. 103, at 11:13-14.
[24] *Id.*
[25] ECF No. 103, at 11:9-12.
[26] ECF No. 90, at 72:21-23.
[27] *Id.* at 67:20-24
[28] *United States v. Miller*, 953 F.3d 1095, 1101-1103 (9th Cir. 2020).
[29] *See* ECF No. 99.

occurred, the Government did not prove beyond a reasonable doubt that Ms. Fiore and Sheena Siegel and/or any other purported persons conspired to commit wire fraud.

Regarding the crime of conspiracy to commit wire fraud, "[w]ithout the knowledge, the intent cannot exist.... Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal."[30] "Mere casual association with conspiring people is not enough.... Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct to find that a defendant committed that crime."[31] This is not like a narcotics conspiracy where each person can be deemed to know that he is part of an overall distribution network, each portion of which must work if anyone is to benefit.[32] It is imperative for courts to prohibit "an unwarranted vagueness of proof as to this most basic element of conspiracy."[33]

The Government argues that "Siegel's name was also at the top of the letter stating that 100% of donations to ABPF would be used for the Alyn Beck statue.…"[34] The same letter that the Government could not prove was ever sent to *anyone*,[35] yet claims was "one of the primary instruments of the fraud scheme."[36] It further argues that Ms. Siegel was employed by Alchemy, the company that helped prepare Fiore's campaign finance filings.[37] However, the present case has <u>nothing</u> to do with campaign finance filings, no one testified that Ms. Fiore also worked for the company nor present evidence that the reports were purportedly falsified.

Simply, there is no knowledge for intent to exist. The Government did not prove any agreement. It proved that Ms. Fiore has a regular family life whose daughters help their single mother. No evidence was presented to speak to the relationship between Ms. Fiore and Ms. Siegel,

---

[30] *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959) (quoting *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943)).
[31] *United States v. Estrada–Macias,* 218 F.3d 1064, 1066 (9th Cir.2000) (internal citations omitted).
[32] *United States v. Brown*, 912 F.2d 1040, 1044 (9th Cir. 1990).
[33] *United States v. Melchor-Lopez*, 627 F.2d 886, 892 (9th Cir. 1980).
[34] *See* ECF No. 103, at 15:12-12-14.
[35] *See* ECF No. 93, at 129:20-25; 130:1.
[36] *See* ECF No. 103, at 15:14.
[37] *Id.* at 11-12.

other than the fact that they are mother and daughter. Nothing in the testimony demonstrates that Ms. Siegel had knowledge of the conspiracy to commit wire fraud, or as argued above, that Ms. Fiore did in fact commit wire fraud. If the Court is left asking itself, "*When* did Ms. Siegel join such conspiracy?" that is simply a fact that was never discovered at trial.

## II.

## CONCLUSION

Based upon the foregoing and the papers and pleadings herein, Ms. Fiore's Motion for Judgment of Acquittal should be granted.

Dated this 21st day of February, 2025.

CLARK HILL PLLC

/s/ Paola M. Armeni
PAOLA M. ARMENI
Nevada Bar No. 8357
GIA N. MARINA
Nevada Bar No. 15276
1700 South Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Tel: (702) 862-8300

*Attorneys for Defendant, Michele Fiore*

CLARKHILL\M9636\503106\280866398.v3-2/21/25

# CERTIFICATE OF SERVICE

The undersigned, an employee of Clark Hill PLLC, hereby certifies that on the 21st day of February, 2025, I served a copy of the **DEFENDANT MICHELE FIORE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. RULE 29** via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

Alexander Byrne Gottfried    alexander.gottfried@usdoj.gov

Dahoud Askar    Dahoud.Askar@usdoj.gov, heather.depremio2@usdoj.gov

/s/ S. Concepcion
An employee of CLARK HILL PLLC